154 N.J. Super. 420 (1977)
381 A.2d 811
JAMES CHRISTOPHER FULLER, AND PRISCILLA B. RANSOHOFF, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
RUTGERS, THE STATE UNIVERSITY, JOHN DOE, RICHARD ROE, PETER POE, AND JOHN ROE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 1, 1977.
Decided December 8, 1977.
*421 Before Judges LORA, SEIDMAN and MILMED.
Ms. Cynthia M. Jacob argued the cause for appellants (Messrs. Norris, McLaughlin & Marcus, attorneys).
Ms. Linda A. Palazzolo argued the cause for respondent, Rutgers, The State University (Messrs. McElroy, Connell, Foley and Geiser, attorneys).
PER CURIAM.
James Fuller was injured on November 8, 1974 when he jumped over a concrete barrier fence in the rear of his dormitory at Livingston College, Rutgers University. Due to his lengthy hospitalization, Fuller authorized his grandmother, Priscilla Ransohoff, to handle any legal matters concerning the accident.
*422 Defendant Rutgers promptly received knowledge of the accident and investigated it. Within 90 days of the accident Ransohoff consulted an attorney who, she asserts, advised her that she had four years in which to think about bringing suit because James was 18 when the accident occurred. Relying on this information Ransohoff did nothing further until November 8, 1976, when her present attorney informed her of the applicable statute of limitations and the notice requirements of the Tort Claims Act. Plaintiffs filed suit the same day and moved to file a notice of late claim pursuant to N.J.S.A. 59:8-9. The trial judge denied the motion, dismissed the complaint as to defendant Rutgers, and this appeal ensued.
Plaintiffs first contend that the trial judge erred in not exercising his discretion to allow them to file a late notice of intention to claim under the Tort Claims Act because (1) excusable neglect existed, and (2) defendant Rutgers had received full knowledge of the accident in a timely manner and was therefore not prejudiced by the failure to give timely formal notice. We disagree.
It appears that Ransohoff talked to the Dean of Students at Rutgers University shortly after the accident occurred and within 90 days thereof. However, no formal notice to file a claim under the Tort Claims Act was given at this time because, as stated above, plaintiffs had consulted an attorney who advised them that they had four years in which to consider instituting suit. They did not learn that this advice was wrong until November 8, 1976, two years after the accident, at which time they filed a complaint and a notice of motion to file a late claim pursuant to N.J.S.A. 59:8-9, which provides:
A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a judge of the superior court, be permitted to file such notice at any time within 1 year after the accrual of his claim provided that the public entity has not been substantially prejudiced thereby.
*423 "Accrual" as used in the statute is defined in accordance with existing law in the private sector and means the date on which the accident occurs, and is not affected by the notice provisions of the statute, N.J.S.A. 59:8-1. Accordingly, plaintiffs' cause of action accrued on November 8, 1974. Bell v. Camden Cty., 147 N.J. Super. 139, 142 (App. Div. 1977); Anaya v. Tp. of Vernon Tp., 139 N.J. Super. 409, 413 (App. Div. 1976), certif. den. 71 N.J. 494 (1976).
It is plaintiffs' contention that because of the excusable neglect and lack of prejudice to defendant since it had actual knowledge of the accident in a timely manner, the trial judge would have been justified in exercising his discretion favorably. However, it is clear that a judge is powerless under the statute to exercise any discretion or to act after a period of one year has elapsed from the date on which the cause of action accrued, where application to the court by motion for permission to file a late notice of claim has not been made within the year. Bell v. Camden Cty. supra, 147 N.J. Super. at 142; Anaya v. Vernon Tp., supra, 139 N.J. Super. at 413. Excusable neglect and lack of prejudice, where relevant, are factors which may be considered by the judge only in cases in which he has discretion, i.e., cases in which such motion is made within one year after the accrual of the claim. Bell v. Camden Cty., supra at 142; Keller v. Somerset Cty., 137 N.J. Super. 1, 5 (App. Div. 1975).
Plaintiffs' reliance upon Lutz v. Semcer, 126 N.J. Super. 288 (Law Div. 1974); Wade v. N.J. Turnpike Auth., 132 N.J. Super. 92, 99-100 (Law Div. 1975); Keller v. Somerset Cty., supra: Marino v. Union City, 136 N.J. Super. 233 (Law Div. 1975); Viles v. California, 66 Cal.2d 24, 56 Cal. Rptr. 666, 423 P.2d 818 (Sup. Ct. 1967), and Thompson v. Fresno Cty., 59 Cal.2d 686, 31 Cal. Rptr. 44, 381 P.2d 924 (Sup. Ct. 1963), is misplaced since these cases concerned situations where the motions for relief were made *424 within the period of time fixed by the statute for the exercise of the court's discretion.
Similarly, plaintiffs' reliance upon Vedutis v. Tesi, 135 N.J. Super. 337 (Law Div. 1975), aff'd o.b. 142 N.J. Super. 492 (App. Div. 1976), and Wozniak v. Peninsula Hospital, 1 Cal. App.3d 716, 82 Cal. Rptr. 84 (D. Ct. App. 1969), is equally unfounded because those cases dealt with the "infant" exception to the Tort Claims Act which expressly preserves a plaintiff's right to commence an action within the time limitation of the act, after his coming to or being of full age or sound mind. N.J.S.A. 59:8-8. Here, Fuller was an adult on the date of the accrual of the action.
Plaintiffs further assert that, by analogy, the "discovery" concept, applicable to cases where the statute of limitations is asserted as a defense, should likewise be applied to extend the time to file a notice of claim under the notice provisions of the Tort Claims Act. We do not agree. Factually, there is no basis here for the application of the philosophy of the "discovery rule," which doctrine provides that in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered, that he may have a basis for an actionable claim. Lopez v. Swyer, 62 N.J. 267, 272 (1973). Plaintiffs obviously were aware on November 8, 1974 of the accident and injuries sustained. Moreover, the injured party's grandmother, acting in his behalf, consulted an attorney within 90 days after the accident. Unlike the situation in Lopez v. Swyer, she was clearly aware of a potential cause of action, but delayed acting because of erroneous advice given her as to the time in which she could sue.
Plaintiffs finally contend that the notice provisions of the Tort Claims Act constitute a denial of equal protection on their face and as applied because they arbitrarily create a class of tort victims who are treated differently than other tort victims in that they hold one set of tort victims to a more demanding set of standards than that to which *425 other tort victims are held, thereby constituting an arbitrary and unreasonable discrimination. In support of their thesis, they cite Reich v. State Highway Dept., 386 Mich. 617, 194 N.W. 2d 700 (Sup. Ct. 1972), and Turner v. Staggs, 89 Nev. 230, 510 P.2d 879 (Sup. Ct. 1973), cert. den. 414 U.S. 1079, 94 S.Ct. 598, 38 L.Ed.2d 486 (1973), which held that their respective tort claims acts violated equal protection because the creation of two classes of tortfeasors bore no reasonable relationship to the purpose of the acts. 194 N.W.2d at 702; 510 P.2d at 883.
While we know of no New Jersey case dealing with this issue, reference to California precedents is appropriate since our Tort Claims Act was patterned after that of California. S.E.W. Friel Co. v. N.J. Turnpike, 73 N.J. 107, 122 (1977); Kleinke v. Ocean City, 147 N.J. Super. 575, 579 (App. Div. 1977); Burg v. State, 147 N.J. Super. 316, 322 (App. Div. 1977), certif. den. 75 N.J. 11 (1977): Report of the Attorney General's Task Force on Sovereign Immunity, 209-210 (1972).
In Stanley v. City and County of San Francisco, 48 Cal. App.3d 575, 121 Cal. Rptr. 842 (D. Ct. App. 1975), plaintiffs admitted their failure to file suit within the statutory time limit. They contended, however, that the notice provisions of the California act were violative of the due process and equal protection clauses of the Federal and California Constitutions. The District Court of Appeals upheld the validity of the notice provisions. Concerning the equal protection argument, the court noted that the clause does not prohibit legislative classification and imposition of statutory restraints on one class which are not imposed on another. "The classification is constitutionally infirm only if it bears no rational relationship to the achievement of a legitimate state objective." 121 Cal. Rptr. at 846. (emphasis in original)
The court found a legitimate state interest for the following reasons:
* * * one of the reasons for this type of legislation is to prevent public funds from being consumed in needless litigation by affording *426 the public entity an opportunity for amicable adjustment before it is charged with the cost of suit and other expenses. Another reason is that it provides the public body responsible for making preparations for the fiscal year with an opportunity to be informed in advance as to the indebtedness or liability that it may be expected to meet. A third reason is to give the public entity prompt notice of a claim in order to enable it to investigate the merits of the claim while the evidence is still fresh and the witnesses are available.

* * * * * * * *
The fourth reason is to afford the public entity a chance to correct the conditions or practices which gave rise to the claim. This latter circumstance is especially significant in light of the fact that public entities own and operate a variety of public properties (e.g., parks, playgrounds, beach facilities, streets, sidewalks, public buildings, swimming pools, etc.), the dangerous condition of which creates liability in case the entity had actual or constructive notice of the dangerous condition and failed to take timely precautionary measures to remedy it (cf. §§ 835, 835.2).
[121 Cal. Rptr. at 846].
See also, Tammen v. San Diego Cty., 66 Cal.2d 468, 58 Cal. Rptr. 249, 257, 426 P.2d 753, 761 (Sup. Ct. 1967); Carr v. State, 58 Cal. App.3d 139, 129 Cal. Rptr. 730, 733 (D. Ct. App. 1976).
In Roberts v. State, 39 Cal. App.3d 844, 114 Cal. Rptr. 518 (D. Ct. of App. 1974), a salient distinction between the Nevada and Michigan legislation and the California Tort Claims Act was stressed. The Nevada and Michigan legislation has "the principal goal of putting public entities on an `equal footing' with the private tortfeasor," while the California statute provides that there is governmental immunity except for those very specific areas in which the statute permits suit. Id. at 521. A similar limitation is set forth in N.J.S.A. 59:1-2. The California courts have long recognized that the state may impose conditions as a prerequisite to the commencement of an action against it and may place limitations upon the enforcement of such actions. Carr v. State, supra, 129 Cal. Rptr. at 732; Stanley v. City & County of San Francisco, 121 Cal. Rptr. at 846.
Plaintiffs seek to distinguish the California cases by reason of procedural differences in the two statutes. They argue *427 that since California, unlike New Jersey, provides for the processing and settlement of claims by administrative boards, notice invokes the administrative procedure and, on that basis, the notice provision in California bears a reasonable relationship to the statutory purpose which does not exist in New Jersey. We find such contention to be without merit since we can not discern any basis for concluding notice provisions would be rationally related to an administrative but not a judicial process. Moreover, plaintiffs' contention fails to recognize the express purpose of N.J.S.A. 59:8-8 to limit the State's liability and to provide for prompt settlement and investigation of claims. We also note New Jersey has rejected the creation of an administrative body that would fail "to play a significant role in settling the adjudication of State claims." Attorney General's Report, supra at 14-15.
On balance, we are of the view the reasoning of the California cases is more persuasive and reasonably support the purposes of our statute. The Equal Protection Clause does not prohibit mere inequality or difference in treatment, and a classification must be upheld under any reasonable set of facts unless there is a showing of invidious discrimination. Morey v. Doud, 354 U.S. 457, 463, 77 S.Ct. 1344, 1 L.Ed.2d 1485, 1490 (1957). See also, Trainor v. Newark, 145 N.J. Super. 466, 472 (App. Div. 1976). Finally, it should be noted that the majority of jurisdictions having Tort Claims Acts and addressing the equal protection issue have upheld the notice provisions. See Annotation, "Modern status of the law as to validity of statutes or ordinances requiring notice of tort claim against local governmental entity," 59 A.L.R.3d 93, 109 (1974).
Affirmed.