159 N.J. Super. 154 (1978)
387 A.2d 393
DEPARTMENT OF TRANSPORTATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
PSC RESOURCES, INCORPORATED, A DELAWARE CORPORATION, SUCCESSOR OF PHILLIPS RESOURCES, INC., A DELAWARE CORPORATION, BY CHANGE OF NAME ON JANUARY 16, 1974, AND DIAMOND HEAD OIL REFINING COMPANY, INCORPORATED, A DISSOLVED NEW JERSEY CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 10, 1978.
*157 Mr. John J. Degnan, Attorney General of New Jersey, for plaintiff (Mr. Gary Christopher Hess, Deputy Attorney General, attorney).
Mr. Charles F. Mandell for defendant PSC Resources, Incorporated.
GERONIMO, J.S.C.
The court is presented with three motions brought by plaintiff and defendant PSC Resources, Inc. Codefendant Diamond Head Oil Refining Company is in default and not involved in these motions, so that all references to defendant pertain only to PSC.
The motions are (1) by plaintiff to strike defendant's counterclaim; (2) by plaintiff to strike defendant's eleventh affirmative defense, and (3) by defendant to dismiss the sixth count of the complaint. Other motions were considered by the court herein but are not the subject matter of this opinion.
Defendant has been engaged in the operation of a waste oil reprocessing and canning facility located adjacent to property owned by plaintiff in Kearny, New Jersey. Plaintiff contends that in the operation of this facility defendant discharged petroleum products and other material onto plaintiff's property. Plaintiff seeks judgment for damages *158 and judgment to enforce certain statutory provisions regarding the discharge of petroleum products and other polluting materials.
By way of counterclaim, defendant alleges that plaintiff has entered into various leases or has granted various licenses permitting third parties to deposit their waste oil and other substances onto the "Dump Area," a section of plaintiff's property, thereby causing accumulated material to be discharged upon defendant's adjacent property, to its damage.

I. The Counterclaim
Plaintiff urges the counterclaim be dismissed by reason of defendant's failure to comply with the notice of claim provisions in the New Jersey Tort Claims Act. N.J.S.A. 59:1-1 et seq. A claim arising under the act must be filed within 90 days after the accrual of the cause of action, either with the Attorney General or the department or agency involved in the wrongful act. N.J.S.A. 59:8-7; 59:8-8. The claimant must then wait six months after the notice of claim is received before filing suit. N.J.S.A. 59:8-8.
The resolution of this motion depends on the interpretation of N.J.S.A. 59:8-3 which provides:
No action shall be brought against a public entity under this act unless the claim upon which it is based has been presented in accordance with the procedure set forth in this chapter. [Emphasis supplied]
This section makes it clear that a notice of claim is "a precondition and an inherent part of maintaining `an action under the act.'" Vedutis v. Tesi, 135 N.J. Super. 337, 341 (Law Div. 1975), aff'd 142 N.J. Super. 492 (App. Div. 1976). Absent compliance with the notice requirements, no suit may be maintained. See Lutz v. Gloucester Tp., 153 N.J. Super. 461, 463 (App. Div. 1977); Fuller v. Rutgers State University, 154 N.J. Super. 420 (App. Div. 1977).
*159 Defendant stipulates, for the purposes of this motion, that it has not filed a notice of claim. Defendant contends, however, that a counterclaim is not an "action * * * under this act" within the meaning or intent of N.J.S.A. 59:8-3, and further that the purposes served by such section, in making compliance with the notice requirements a prerequisite to the institution of an action, do not apply when the claim is asserted only after the state has initiated suit.
N.J.S.A. 59:2-1(a) provides:
Except as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.
The act thus provides for governmental immunity except in those very specific areas in which the statute permits suit. Fuller, supra at 426. Defendant's cause of action, whether asserted as an original suit or as a counterclaim, is therefore created by the statute. It would be anomalous indeed to hold that a counterclaim is not an "action * * * under this act," within the ambit of N.J.S.A. 59:8-3, inasmuch as the Tort Claims Act expressly creates the cause of action on which the counterclaim is based.
A counterclaim is not a defensive pleading. Together with original claims and crossclaims, a counterclaim is considered to be a "statement of a cause of action." Kelleher v. Lozzi, 7 N.J. 17, 22 (1951). Indeed, it has been characterized as a "counteraction." Broad & Branford Place Corp. v. J.J. Hockenjos Co., 132 N.J.L. 229, 234 (Sup. Ct. 1944). A counterclaim has been defined as "an affirmative effort to enforce or collect upon an affirmative claim." Gibbins v. Kosuga, 121 N.J. Super. 252, 256 (Law Div. 1972).
That counterclaims are included within the meaning of the phrase, "action * * * under this act," in N.J.S.A. 59:8-3 cannot be gainsaid. A careful review of the purposes of this section leads to the same conclusion. The 1972 comment to N.J.S.A. 59:8-3 states:
*160 This section mandates that no suit shall be brought against a public entity unless a claimant has furnished the appropriate public entity with a notification of claim. The purpose of the claims notification requirement in this Chapter is two-fold: (a) to allow the publice entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit; (b) to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense.
Two further purposes are served by the claims notification requirement. (1) It affords the public entity a chance to correct the conditions. Fuller v. Rutgers, supra, 154 N.J. Super. at 426. (2) It "provides the public body responsible for making preparations for the fiscal year with an opportunity to be informed in advance as to the indebtedness or liability that it may be expected to meet." Id.
Defendant contends that when the State initiates an action, it demonstrates that it has notice of the underlying facts, so that a counterclaim may be filed absent the usual notice of claim. In the present case, however, the counterclaim arises from the activities of third parties, which are not alleged to have arisen from the same transactions which plaintiff asserts against defendant. In such a case, all of the purposes for requiring notice to the state are applicable to the counterclaim.
Other jurisdictions have barred the assertion of counterclaims when the defendant has not previously complied with notice of claim provisions of municipal ordinances. County of Nassau v. Wolfe, 51 Misc.2d 848, 273 N.Y.S.2d 984 (D. Ct. 1966); Village of Southampton v. Platt, 55 A.D.2d 603, 389 N.Y.S. 2d 625 (App. Div. 1976), app. dism., 41 N.Y.2d 970, 394 N.Y.S.2d 884, 363 N.E.2d 590 (Ct. App. 1977); City of Milwaukee v. Milwaukee Civil Developments, Inc., 71 Wis.2d 647, 239 N.W.2d 44 (Sup. Ct. 1976). In the latter case the court found that many of the purposes for requiring notice of claim are applicable even when the counterclaim arises from the same transaction as alleged in the complaint.
*161 For reasons stated, the counterclaim cannot be asserted under the Tort Claims Act and is hereby dismissed.

II. Eleventh Affirmative Defense
The eleventh affirmative defense states that plaintiff does not have standing to assert the fifth count of the complaint. In that count plaintiff alleges that waste material, including petroleum products, was discharged by defendant into a body of water known as Oil Lake. During periods of heavy rainfall and other times, including September 3, 1974 and April 29, 1974, Oil Lake allegedly overflowed, so that the petroleum products were carried into other waters within the jurisdiction of the state of New Jersey.
Plaintiff seeks under these facts to enforce N.J.S.A. 23:5-28, a section of the Water Quality Improvement Act, which provides in pertinent part:
No person shall put or place into, turn into, drain into, or place where it can run, flow, wash or be emptied into, or where it can find its way into any of the fresh or tidal waters within the jurisdiction of this State any petroleum products, debris, hazardous, deleterious, destructive or poisonous substances of any kind.... A person violating this section shall be liable to a penalty of not more than $6,000 for each offense, to be collected in a summary proceeding under the Penalty Enforcement Law (N.J.S. 2A:58-1 et seq.), and in any case before a court of competent jurisdiction wherein injunctive relief has been requested. The Superior Court, County Court and county district court shall have jurisdiction to enforce said Penalty Enforcement Law. If the violation is of a continuing nature, each day during which it continues shall constitute an additional, separate and distinct offense. The department is hereby authorized and empowered to compromise and settle any claim for a penalty arising under this section in such amount in the discretion of the department as may appear appropriate and equitable under all of the circumstances. The department may institute a civil action in a court of competent jurisdiction for injunctive relief to prohibit and prevent any person from violating the provisions of this section and said court may proceed in the action in a summary manner.
The Environmental Rights Act, N.J.S.A. 2A:35A-4(a) (hereafter § 4a) provides:
*162 Any person may maintain an action in a court of competent jurisdiction against any other person to enforce, or to restrain the violation of, any statute, regulation or ordinance which is designed to prevent or minimize pollution, impairment or destruction of the environment.
The prerequisites for maintaining an action under § 4(a) appear to be met. First, § 3(a) of the act defines a "person" to include "any political subdivision of the State and any agency or instrumentality of the State or of any political subdivision of the State."
Second, the action seeks to enforce a section of the Water Quality Improvement Act, which is clearly designed to minimize pollution or impairment of the environment. Third, the Superior Court is a court of competent jurisdiction, as provided by N.J.S.A. 23:5-28.
Defendant contends that N.J.S.A. 23:5-8 is a penalty statute which must be strictly construed, and that since the Department of Environmental Protection is the sole enforcement agency named in the statute, the Legislature did not intend to permit any other agency to enforce it.
It should be noted that the Department of Environmental Protection is given permissive, but not exclusive authority, to enforce the statute. Even if the statute did confer exclusive authority of enforcement on the Department of Environmental Protection, it must be read in conjunction with § 4(a) of the Environmental Rights Act, which is the later statute.
It is presumed that the Legislature is thoroughly conversant with its own legislation and that later enactments are made with knowledge thereof. Brewer v. Porch, 53 N.J. 167, 174 (1969); Eckert v. New Jersey State Highway Dept., 1 N.J. 474, 479 (1949). As the court said in Global American Ins. Managers v. Perera Co., Inc., 137 N.J. Super. 377 (Ch. Div. 1975), aff'd 144 N.J. Super. 24 (App. Div. 1976):
[The legislature] is further presumed to have passed or preserved cognate laws, with the intention that they be construed to serve a *163 useful and consistent purpose. Thus, it is the duty of the courts to reconcile them so as to give effect to both expressions of the lawmakers' will. [at 391-392; citation omitted]
To the extent that the two statutes conflict, however, the later governs, according to general principles of statutory construction. Bruck v. Credit Corp., 3 N.J. 401, 408 (1950); Meridian Development Co. v. Edison Tp., 91 N.J. Super. 310, 314 (Law Div. 1966).
Section 4(a) of the Environmental Rights Act permits any person to enforce "any statute" designed to prevent or minimize pollution of the environment. The Sponsor's Statement to Assembly Bill 1245, which was enacted into law as the Environmental Rights Act provides:
The bill recognizes that the primary responsibility to prosecute polluters rests with government. In those instances where government is unable or unwilling to take the necessary action, any person should be assured of an alternative course of action.
The broad language of the act and the foregoing statement of its policy indicate that actions by "any person" were intended to be supplemental to actions by state agencies expressly authorized to enforce statutes designed to protect the environment. Even though the Legislature named the Department of Environmental Protection as the enforcing authority when N.J.S.A. 23:5-28 was adopted, § 4(a) of the Environmental Rights Act broadly expands the right to enforce the statute and must prevail.
The eleventh affirmative defense is therefore dismissed.

III. The Sixth Count
The sixth count of the complaint repeats the allegations of prior counts and further alleges that on certain specific dates defendant deposited, stored and allowed to accumulate polluting matter so that it gained access to a body of water in such a manner as to (1) cause injury to *164 the Department of Transportation and (2) cause or threaten degradation of water quality resulting in damage to the aquatic community or wildlife in and adjacent to the affected water body, both in violation of N.J.S.A. 26:3B-4.
N.J.S.A. 26:3B-4 provides:
No person, corporation or municipality shall deposit, store or allow to accumulate or provide storage facilities for human excrement, any decomposable animal or vegetable matter, domestic, factory, workshop, mill or slaughterhouse refuse, sink, laundry, milk, creamery or cheese house waste or any other polluting matter so that it gains access to any well, spring, stream, lake or other body of water, including the ocean and its estuaries, in such manner as to cause or threaten injury to any of the inhabitants of this State, either in health, comfort or property, or to cause or threaten degradation of water quality resulting in damage to the aquatic community or wildlife in and adjacent to the affected water body.
N.J.S.A. 26:3B-11 further provides:
Every municipal court shall have jurisdiction over proceedings to enforce and collect any penalty imposed because of a violation of any provision of this act, if the violation has occurred within the territorial jurisdiction of the court. The proceedings shall be summary and in accordance with the Penalty Enforcement Law (N.J.S. 2A:58-1 et seq.). Process shall be in the nature of a summons or warrant and shall issue only at the suit of the Department of Health of the State of New Jersey or of the State Commissioner of Health, or of the local board of health, or of such board, body or officers exercising the functions of a local board of health according to law, as the case may be, as plaintiff.
Defendant contends that under the provisions of N.J.S.A. 26:3B-11 only the State Department of Health, the State Commissioner of Health, or the local board of health has the right to bring suit. For the reasons set forth previously, the court concludes that Environmental Rights Act bestows this right on "any person," including the Department of Transportation. N.J.S.A. 2A:35A-4(a).
Defendant further contends that the Superior Court does not have jurisdiction over an action brought to enforce N.J.S.A. 26:3B-4, since N.J.S.A. 26:3B-11 provides that jurisdiction shall be in the municipal court.
*165 N.J. Const. (1947), Art. VI, § III, par. 4, dealing with the Superior Court, provides:
Subject to rules of the Supreme Court, the Law Division and the Chancery Division shall each exercise the powers and functions of the other division when the ends of justice so require, and legal and equitable relief shall be granted in any cause so that all matters in controversy between the parties may be completely determined.
The court in Curley v. Curley, 37 N.J. Super. 351 (App. Div. 1955), interpreting this provision stated:
Everything we have read as to the history of the Judicial Article demonstrates that the supreme consideration at work in the establishment of the Superior Court was the demand for a court of original jurisdiction which would have the capacity, in one action, to dispose of an assortment of controversies between the parties, without parcelling the issues out to separate courts and thereby compelling a litigation and relitation in those courts of overlapping phases of the matter. The pressure of this policy, it is quite evident, shaped the constitutional provision before us.
This being the large purpose of that provision, we think its terms furnish the Superior Court implicitly with the jurisdiction indispensable to the accomplishment of that purpose  even though except for this clause, one branch of the controversy would have been cognizable only in an inferior court. We would, it seems to us, be thwarting those broad designs in this case if we were to subject the parties here to suits in two courts. [at 360-361; emphasis supplied]
The rules of court further affirm this concept of the Superior Court's powers. R. 4:38-1(b) provides:
When an action is pending in the Superior Court, and another action involving a common question of law or fact arising out of the same transaction or series of transactions is pending in any county court, county district court or municipal court, the Superior Court on a party's or its own motion may remove the action from the other court and consolidate it with the action in the Superior Court. [Emphasis supplied]
In the present case, the issue of whether defendant has violated N.J.S.A. 26:3B-4 involves questions of fact *166 arising from the same activities which are alleged as the basis of the other counts of the complaint. This court therefore has jurisdiction. Defendant's motion to dismiss the sixth count is denied.
Plaintiff to submit an appropriate order.