Isabel Martinez **OQUENDO**, Plaintiff,

v.

**INSURANCE COMPANY OF PUERTO RICO et al., Defendants.**

**Civ. No. 818–71.**

United States District Court,
D. Puerto Rico.

Nov. 25, 1974.

Ernesto Maldonado Perez, Old San Juan, P. R., for plaintiff.

Alfredo Rafucci, Dept. of Justice, Commonwealth of P. R., for defendant Muncipality of Vega Alta.

Luis M. Pagan, Santurce, P. R., for defendant Ins. Co.

## OPINION AND ORDER

TOLEDO, Chief Judge.

On April 4, 1974, this Court filed its Opinion and Order dismissing the Municipality of Vega Alta as a codefendant in plaintiff's complaint. On April 17, 1974, plaintiff filed a motion for reconsideration of our Order, based partly on previously alleged grounds that the 90-day notice requirement established in Title 21, Laws of Puerto Rico Annotated, Section 1603, to allow suit against a municipality, should be computed from the time plaintiff learned the extent of her damages to the day that notice of the intended suit was mailed to the Mayor of the Municipality of Vega Alta, not the day in which he received said notice. Plaintiff also raised the issue of the constitutionality of the 90-day notice requirement, for the first time, in her motion for reconsideration. Consequently, together with her motion she has filed a request for a three judge court to decide the alleged issue of constitutionality.

This Court is of the opinion that the motion for reconsideration should be denied.

■ A careful examination of Title 21, Laws of Puerto Rico Annotated, Section 1603(c), indicates that the municipality to be sued must be served with notice within 90 days following the date on which claimant learns of his damages. As the actual wording of the statute clearly indicates:

". . . said written notice *shall be presented* to the municipal chief executive *within ninety days* following the date on which the claimant learned of the damages he is claiming for." (emphasis supplied).

The only exception granted in Section 1603(c) refers to claimants who are physically or mentally incapacitated and provides that:

"If the claimant is mentally or physically incapacitated to give said notice within the term prescribed, he shall not be subject to the limitation above provided but shall be bound to give said notice within thirty days following the date on which such incapacity ceases."

This exception does not benefit plaintiff, as there has been no showing she was mentally or physically incapacitated at any time after the accident.

Referring now to Section 1603(b), we find that it allows a claimant to choose

the means through which he will give the required notice. He may deliver it "by sending it by registered mail or through personal service on him or in any other proper manner recognized by law." However, since there is no provision as to the manner in which the term of 90 days is to be computed should service by mail be chosen, we must conclude that the statute does not contemplate any lengthening of the 90-day period allowed to deliver written notice to the chief executive of the municipality.

■ As stated in Mangual v. Superior Court, (1963), 88 P.R.R. 475, at page 480:

"It may be asserted that the interpretation on the mandatory character of the notice depends, in the last analysis, on the wording of the statute."

The Supreme Court of Puerto Rico in that case examined the legislative history of the 90-day notice requirement and concluded that said requirement had been considered substantive in character. Id. at page 481. Finally, the Court flatly ruled that:

" . . . in Puerto Rico compliance with the notice requirement is a condition precedent of strict compliance in order to be able to sue the municipality." Id. at page 483.

Therefore, a claimant may choose whatever form he wishes to make his notification, but nevertheless, he is bound by the fact that the municipality must know of his intention to sue within 90 days of the date in which claimant learned of the damages he is claiming for. This Court is of the opinion, therefore, that the date in which the written notice was allegedly mailed cannot be construed as the date in which notice was presented to the municipality and can not constitute compliance with the strict mandate of the law as interpreted in *Mangual,* supra.

In view of the above, this Court will not discuss at length plaintiff's strenuous argument with respect to this point. Nevertheless, a few observations are in order. First, although basing her argument on the alleged date of mailing, plaintiff has not established that notice was mailed on August 13, 1971. Through the signed receipt, it has been shown that said notice was received on August 23, 1971. However, the stamped registered mail slip which sender retains at the time of mailing has not been produced to establish the mailing date and the Court could hardly conclude that the mailing date was indeed August 13, 1971 by simply taking judicial notice than an interval of ten days between mailing and receipt of correspondence "is not altogether uncommon in Puerto Rico", as plaintiff requests.

■ In the second place, plaintiff is correct in asserting that Rule 68.4 of the Puerto Rico Rules of Civil Procedure does not apply in this case as said rule applies only when the interested party has been notified by mail and is required to reply within a specified time.[1] The purpose of the rule is to insure that the responding party will have available the full specified term within which he must reply and this is accomplished by adding three days to the original term. The only relevance of this rule in the instant case lies in the fact that it is based on the assumption that delivery by mail takes no more than three days in Puerto Rico. Therefore, had the Court agreed that notice had been given when it was deposited in the mail, and in the absence of proof of the actual date of mailing, the assumption on which Rule 68.4 is based would have been controlling and the Court would have fixed the date of mailing as August 20, 1971.

■ Finally, we must point out that the cases cited by plaintiff to establish

---

1. Title 32, App. II, R. 68.4, states:
"Whenever a party has the right or is required to do some act within a prescribed period after the service of a notice or other paper upon him, and the notice or paper is served upon him by mail, 3 days shall be added to the prescribed period."

that notice is completed when it is mailed, rather than upon receipt, are not applicable in the instant case for the same reason that plaintiff previously argued that Rule 68.4 was not applicable, namely, that the rule only covered a particular situation, distinct from that in the instant case. The cases cited by plaintiff are all cases where Rule 67.2 of the Puerto Rico Rules of Civil Procedure, or its substantially similar predecessors, was being interpreted.[2] Said rule applies to service of papers *subsequent* to the *original complaint* on parties which have appeared and does not for example apply to pleadings asserting new or additional claims for relief against defendants in default, which new claims must be served upon the appropriate party as provided for service of summons in Rule 4 of the Puerto Rico Rules of Civil Procedure.[3]

As stated in *Mangual*, supra, the notice requirements of Title 21, Laws of Puerto Rico Annotated, Section 1603, are substantive in character and the wording of the statute is controlling.

However, although none of the Puerto Rico Rules of Civil Procedure is strictly applicable, the Court feels that the nature of the notification required by the statute is closer to that of the serving of process under Rule 4 than to notification of pleadings, motions, etc. under Rule 67.2. Hence, were we to look beyond the wording of Title 21, Laws of Puerto Rico Annotated, Section 1603, and rely on the Puerto Rico Rules of Civil Procedure to guide our interpretation of the notice required, we would feel constrained to focus on Rule 4 rather than on Rule 67.2 as plaintiff would have us do. Specifically, we would look to Rule 4.8 where proof of service in those cases where substitute service is made under Rule 4.7 requires presentation of the defendant's return receipt.[4]

The second alleged ground for plaintiff's motion for reconsideration is that Title 21, Laws of Puerto Rico Annotated, Section 1603(c), is unconstitutional and violates the due process and equal protection clauses of the Constitution of the United States. Plaintiff argues that

2. Title 32, App. II, R. 67.2, states:
"Whenever a party has appeared represented by an attorney, the service shall be made upon the attorney unless service upon the party himself is ordered by the court. Service upon the attorney or upon a party shall be made by delivering a copy to him or by mailing it to him at his last known address, or, if no address is known, by leaving it with the clerk of the court. Delivery of a copy within this rule means: handing it to the attorney or to the party; or leaving it at his office with his clerk or other person in charge thereof; or, if there is no one in charge, leaving it in a conspicuous place therein; or, if the office is closed or the person to be served has no office, leaving it at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein. Service by mail is complete upon mailing."

3. Title 32, App. II, R. 67.1, states:
"Every order required by its terms to be served, every pleading subsequent to the original complaint, unless the court otherwise orders because of numerous defendants, every written motion other than one which may be heard ex parte, shall be served upon each of the parties affected thereby. No service need be made on parties in default

for failure to appear, except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4."

4. Title 32, App. II, R. 4.8, states:
"The person serving the summons shall make proof of service thereof to the court within the time during which the person served must respond to the process. If the service has been made by a marshal, his proof shall consist of the corresponding certificate; and if by a private person, it shall consist of an affidavit made by him. If the service of process is made by publication, the publication thereof shall be evidenced by an affidavit made by the editor or authorized agent of the newspaper, together with a copy of the publication, and by an affidavit accrediting the fact that a copy of the summons, of the complaint, and of the notice of the attachment levied, if such notice is required, has been sent by mail. In the cases of the summons mentioned in Rule 4.7, there shall also be presented the defendant's return receipt. The failure to present proof of service shall not affect the validity of the service. The admission or waiver under oath by the defendant shall render such proof unnecessary."

the 90-day requirement notice established by the statute as a condition to suing a municipality is arbitrary in that it establishes two types of tort feasors, private and governmental, and thus two types of tort victims, only one of which is affected by the notification requirements. Plaintiff cites three cases to support her position: Grubaugh v. City of St. Johns, 384 Mich. 165, 180 N.W.2d 778 (1970); Reich v. State Highway Department, 386 Mich. 617, 194 N.W.2d 700 (1972), from the Supreme Court of Michigan; and Turner v. Staggs, Nev., 510 P.2d 879 (1973), certiorari denied Turner v. Clark County, 414 U.S. 1079, 94 S.Ct. 598, 38 L.Ed.2d 486, by the U. S. Supreme Court, from the Supreme Court of Nevada. She cites no Federal cases on this point, nor any from the Supreme Court of Puerto Rico.

■ The Court has read the cited cases and after having carefully considered the arguments raised, is of the opinion that the constitutional attack is insubstantial and without merit. The argument that due process and equal protection under the Constitution of the United States preclude the enactment of state statutes which establish classifications and hence do not give the same treatment to all citizens was clearly rejected in McGowan v. Maryland, 366 U. S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1960). There, the Supreme Court stated: "Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

This same standard of equal protection was applied in McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed. 2d 222 (1964), and Rinaldi v. Yeager, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1965). In *Rinaldi*, supra, the Court stated: "To be sure, the constitutional demand is not a demand that a statute necessarily apply equally to all persons . . . Hence, legislation may impose special burdens upon defined classes in order to achieve permissible ends." Id. at page 309, 86 S.Ct. at page 1499. The same standard was subsequently applied in ·Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L. Ed.2d 491 (1970), a case where Federal Aid to Families with Dependent Children program sued to enjoin the application of the Maryland maximum grant regulation claiming that it was in conflict with the Equal Protection Clause as well as the Social Security Act.

In this case, the Court after noting on page 477, 90 S.Ct. on page 1158, that, "It cannot be gainsaid that the effect of the Maryland maximum grant provision is to reduce the per capita benefits to the children in the largest families", went on to state on page 485, 90 S.Ct. on page 1162. "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect . . . To be sure, the cases cited, and many others enunciating this fundamental standard . . . have in the main involved state regulation of business or industry. The administration of public welfare assistance, by contrast, involves the most basic economic needs of impoverished human beings. We recognize the dramatically real factual difference between the cited cases and this one, but we can find no basis for applying a different constitutional standard." The Court then concluded on page 486, 90 S.Ct. on page 1162, that "Under this long-established meaning of the Equal Protection Clause, it is clear that the Maryland maximum grant regulation is constitu-

tionally valid", and stated on page 487, 90 S.Ct. on page 1162, "It is enough that the State's action be rationally based and free from invidious discrimination."

In San Antonio School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1972), the Court reiterated the doctrine stating at page 55, 93 S.Ct. at page 1308, "The constitutional standard under the Equal Protection Clause is whether the challenged state action rationally furthers a legitimate state purpose or interest." In this case, the Court having stated in page 54, 93 S.Ct. in page 1308, " . . . to the extent that the Texas system of school financing results in unequal expenditures between children who happen to reside in different districts, we cannot say that such disparities are the product of a system . . . so irrational as to be invidiously discriminatory", upheld the Texas system of financing public education and reversed a three judge court judgment that the system violated the Equal Protection Clause.

Referring now to the requirements of Due Process under the Fifth Amendment, the Supreme Court in Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971), faced with the claim that the "offset" provision of Section 224 of the Social Security Act was arbitrary since it discriminated between those disabled employees who received workmen's compensation and those who received compensation from private insurance or from tort claim awards, held that this difference in treatment was constitutionally valid. The Court stated in page 81, 92 S.Ct. in page 257: "A statutory classification in the area of social welfare is consistent with the Equal Protection Clause of the Fourteenth Amendment if it is 'rationally based and free from invidious discrimination'. Dandridge v. Williams, 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491. While the present case, involving as it does a federal statute, does not directly implicate the . . . Equal Protection

Clause, a classification that meets the test articulated in *Dandridge* is perforce consistent with the due process requirement of the Fifth Amendment."

Most recently, in United States Department of Agriculture v. Moreno, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973), the Supreme Court once more set forth as valid the standard of McGowan v. Maryland, supra, and in determining whether Section 3(e) of the Food Stamp Act of 1964, as amended, violated the Due Process Clause of the Fifth Amendment stated on page 533, 93 S.Ct. on page 2825: "Under traditional equal protection analysis, a legislative classification must be sustained if the classification itself is rationally related to a legitimate governmental interest."

As stated in *Mangual,* supra, the purposes of the statute requiring notice to the municipalities as a condition precedent to bringing a suit for damages are: 1) to give the municipality an opportunity to investigate the facts giving rise to the claim; 2) to discourage unfounded claims; 3) to facilitate prompt settlement; 4) to permit the inspection of the scene of the accident before conditions change; 5) to discover the name of persons who have knowledge of the facts and to interview them while their recollection is more trustworthy; 6) to allow the municipality to make the necessary reserve in the annual budget, and; 7) to minimize the amount of damages sustained by prompt intervention offering proper medical treatment and providing hospitalization facilities to the injured party. These purposes clearly do not offend the concepts of equal protection and due process under the Constitution. They represent a legitimate governmental interest and the fact that their implementation via the 90-day notice requirement can be construed as creating two classes of tort victims does not mean that the statute creates an invidious discrimination. Under the equal protection and due process criteria established by the U. S. Supreme Court, the 90-day notice require-

**1036**

ment must be sustained and no substantial constitutional claim therefore can be considered to exist.

█ In view of the foregoing, the constitutional attack made by plaintiff on Title 21, Laws of Puerto Rico Annotated, Section 1603, is clearly without merit. The question presented has been settled by prior decisions and a three judge court is not required to pass on the validity of a clearly valid state statute. Ex Parte Poreski, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Turner v. Memphis, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962); Marin v. University of Puerto Rico, 346 F.Supp. 470 (D. C.P.R.1972). We, therefore, deny reconsideration of our Order of April 4, 1974, dismissing the complaint and deny the request for convening of a three judge court.

Given the disposition we make of this case, we need not consider whether on a request for reconsideration the issue of constitutionality of a statute can be raised for the first time in a case, nor whether a request for a three judge court can properly be made under Title 28, United States Code, Section 2284, when no injunctive relief is requested, or even possible, as opposed to a request for declaratory judgment under Title 28, United States Code, Section 2201. We likewise make no ruling as to whether, had a substantial constitutional issue been properly raised, the Court would have followed Wackenhut v. Aponte, 386 U.S. 268, 87 S.Ct. 1017, 18 L.Ed.2d 37 (1967) and abstained in order to afford the Supreme Court of Puerto Rico the opportunity to rule in the first instance on the constitutionality of Title 21, Laws of Puerto Rico Annotated, Section 1603.

Plaintiff's motion for reconsideration and request for convening of a three judge court pursuant to Title 28, United States Code, Section 2284, are hereby denied.

It is so ordered.