422 A.2d 981 (1980)
Robert DeKINE et al., Appellants,
v.
DISTRICT OF COLUMBIA, Appellee.
No. 79-663.
District of Columbia Court of Appeals.
Argued June 24, 1980.
Decided October 14, 1980.
*983 Samuel J. Buffone, Washington, D. C., with whom Robert Case Liotta, Washington, D. C., was on the brief, for appellants.
James C. McKay, Jr., Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., at the time the brief was filed, were on the brief, for appellee.
Before GALLAGHER, MACK and FERREN, Associate Judges.
FERREN, Associate Judge:
Robert and Aline DeKine appeal from summary judgment in favor of the District of Columbia based on the trial court's ruling that appellants failed to meet the notice requirements of D.C.Code 1973, § 12-309. They contend that their attorney's April 30, 1975, letter to the District and/or their December 5, 1975, complaint in this action provided timely and adequate notice of their claims for wrongful arrest, unlawful impoundment of their horses, and tortious interference with their business of horse-drawn carriages for hire. We conclude that both the letter and the complaint were untimely. Accordingly, we affirm the judgment.

I.
On May 2, 1975, the Mayor's Correspondence Unit of the District of Columbia government received a letter from appellants' attorney, dated April 30, 1975, giving notice of a claim for damages against the District pursuant to D.C.Code 1973, § 12-309.[1] The letter was date-stamped (at 11:43 a. m. on May 2, 1975), logged, tagged as a "claim letter," and transmitted to the Mayor's Executive Secretary.[2] The letter stated:
We represent Mr. and Mrs. Robert De Kine in a claim against the District of Columbia arising from the actions of the District of Columbia acting in concert with the Washington Humane Society on and after October 31, 1974. This notice is submitted pursuant to the provisions of 12 D.C.Code 309.
Mr. and Mrs. De Kine were at the time operating a business involving horse drawn carriages for hire. On or about October 31, 1974, the District of Columbia, acting through its officers and agents, caused Mr. De Kine to be wrongfully arrested and deprived of his liberty and unjustly and without compensation impounded property of Mr. and Mrs. De Kine, to wit three horses. The horses were seized from private property leased to Mr. De Kine by Park and Lock Parking Lot owned by Rorke Management Enterprises, 900 Wisconsin Avenue, N.W., Washington, D.C.
These acts were part of a pattern and practice of unlawful interference with the business affairs of Mr. and Mrs. De Kine, in which the District of Columbia participated. The District of Columbia *984 participated in and aided this unlawful attempt to harass and deprive Mr. and Mrs. De Kine of property and personal liberty without good cause or just compensation.
If any additional information is necessary to constitute sufficient notice of these claims, please contact the undersigned.
By letter dated May 23, 1975, the Executive Secretary acknowledged the District's receipt of the claim letter and noted that it had been referred to the Corporation Counsel for consideration. On August 11, 1975, the Corporation Counsel's Chief Investigator wrote to appellants' attorney requesting ten items of additional information. Their attorney replied by letter of August 27, 1975, that he could not provide any of the requested information because his clients were out of town. He indicated that upon their return in September 1975 he would provide the information. The District received no further information, however, until December 9, 1975, when the Chief Investigator received a letter informing him that appellants had filed a civil action on December 5, 1975.[3]
The suit was styled "Complaint for False Arrest, Unlawful Seizure and Detention of Property, Negligence, Conspiracy, Misuse of Legal Process, and Intentional Interference with Business Relationship" against the Washington Humane Society, its past and present presidents, and the District of Columbia. Appellants alleged that the Society had "embarked upon a pattern of har[]assment and intimidation of the [plaintiffs] designed to drive them out of business." They further claimed that District "employees, officers and agents" had participated in those activities by (1) arresting Robert DeKine without proper legal process, (2) seizing appellants' property without proper justification or process, and (3) harassing and intimidating appellants and preventing them from carrying out their normal business functions. The complaint referred to 13 separate incidents occurring between September 22, 1973, and June 4, 1975.
The District moved for summary judgment on the ground (among others) that appellants had not satisfied § 12-309. The trial court granted the District's motion on January 4, 1977.[4] This appeal followed.[5]

II.
Appellants contend, first, that their attorney's April 30, 1975, letter provided timely and adequate notice of their claims of false arrest and unjust impoundment against the District.[6] They premise their contention (as, on the facts, they must) on their view that § 12-309 requires only that a claimant send notice to the District within six months of the injury, not that the District also receive it within that period. We disagree with that interpretation. Consequently, the letter was untimely.
*985 A. The timeliness of notice turns on construction of the phrase "has given notice in writing to the [Mayor]." D.C.Code 1973, § 12-309. No case has decided whether the mere sending of notice satisfies this requirement or whether, in addition, the District must receive notice within six months of the injury.[7] Courts in other jurisdictions construing similar notice requirements almost unanimously have rejected the view that mailing, in itself, satisfies the statute. Timely receipt is required. See, e. g., Oquendo v. Insurance Co. of Puerto Rico, 388 F.Supp. 1030, 1032 (D.P.R.1974) (requirement that "notice shall be presented. . . within ninety days" means that municipality must learn of intention to sue within specified period); Rapid Motor Lines, Inc. v. Cox, 134 Conn. 235, 238, 56 A.2d 519, 521 (1947) (provision that notice "shall have been given within sixty days" requires actual delivery within specified period); Shields v. State Highway Commission, 178 Kan. 342, 346, 286 P.2d 173, 176 (1955) (provision that notice "shall be served" within ninety days requires receipt within time prescribed). But see Grubbs v. Prince George's County, 267 Md. 318, 325, 297 A.2d 754, 758 (1972) (requirement that "written notice. . . shall be presented either in person or by registered mail" satisfied by mailing on or before 180th day).
We agree with the approach taken by most of these courts, especially because one of the purposes of the statute is to afford "the opportunity for appropriate government officials to ascertain the facts, and, if appropriate, to adjust the claim." Jenkins v. District of Columbia, D.C.App., 379 A.2d 1177, 1178 (1977). Because this purpose can be achieved only by the District's timely receipt of notice, and the method of delivering written notice under § 12-309 is entirely within the claimant's discretion, we perceive no unfairness in placing the consequences of less-than-rapid postal service upon the claimant, rather than upon the District. See Oquendo, supra at 1032 (claimant may choose form of notification but is bound by notice requirement); Shields, supra 178 Kan. at 346, 286 P.2d at 176 (same). But see Grubbs, supra 267 Ind. at 325, 297 A.2d at 758 (statute provides two alternative ways to "present[]" notice: personal delivery within statutory period or mailing by registered letter before end of statutory period). Accordingly, we hold that § 12-309 requires that the District receive written notice within six months of the injury giving rise to the claim.[8]
B. We consider, next, whether the District's receipt of the letter on May 2, 1975, occurred within the six-month period applicable to the false arrest and impoundment claims. Two computation rules control the inquiry. First, § 12-309 "starts the clock at the moment `the injury or damage was sustained.'" Kelton v. District of Columbia, D.C.App., 413 A.2d 919, 921 (1980). Second, the computation excludes the date of injury while including the date notice is received. See Rapid Motor Lines, supra, 134 Conn. at 237, 56 A.2d at 520-21; 18 E. McQuillin, The Law of Municipal Corporations § 53.161, at 576 & nn. 24-25 (3d ed. 1977).[9]
*986 The injury from false arrest occurs at the first moment of detention.[10] The only arrest specifically complained of in the April 30, 1975, notice letter allegedly occurred "on or about October 31, 1974." The letter, received May 2, 1975, was therefore one day late as to the false arrest claim.
Similarly, the letter was a day late with respect to the impoundment claim. In reaching this conclusion, we reject appellants' assertion that the impoundment claim is to be measured from the date the horses were released (allegedly November 1, 1974) rather than the date of their seizure (October 31, 1974). We do so because the gist of a claim of unlawful seizure or impoundment is conversion or trespass to chattels, which relates the inquiry to the moment of the taking. As Prosser notes:
The conversion is complete when the defendant takes, detains or disposes of the chattel. At that point, it is the traditional view that the plaintiff acquires the right to enforce a sale, and recover the full value of the property. The defendant cannot undo his wrong by forcing the goods back upon their owner, either as a bar to the action, or in mitigation of damages.
. . . In any case, return of the chattel, whether consented to by the plaintiff or compelled by the court, does not bar the action, but goes merely to reduce the damages. [W. Prosser, The Law of Torts § 15, at 97 (4th ed. 1971) (footnotes omitted).]
Accord, Shehyn v. District of Columbia, D.C.App., 392 A.2d 1008, 1012 (1978).

III.
Appellants maintain that even if the notice letter did not satisfy § 12-309, their complaint did. If we assume for the sake of argument that a complaint may serve as written notice under that statute[11] and that the allegations of appellants' complaint provided adequate notice, we conclude, nonetheless, that the complaint was untimely.
In the first place, notice by way of complaint cannot be "given" under § 12-309 until process has been served or the District has received the complaint by other means. See Part II. A. supra. Appellants filed their complaint on December 5, 1975. The date of service is not apparent from the record. Appellants allege service occurred on December 11; the District replies it received the complaint on December 12. Even if appellants are correct, however, the notice period was not tolled until December 11. The question, then, becomes whether December 11, 1975, fell within six months of the dates on which the alleged injuries "[were] sustained." D.C.Code 1973, § 12-309; see note 1 supra. See generally Kelton, supra.
Turning to appellants' specific allegations, we find that the complaint does *987 refer to injurious events occurring after those referred to in the April 30, 1975, notice letter.[12] Even so, however, all challenged actions and injuries relating to Counts I (False Arrest), II (Unlawful Seizure and Detention of Property), III (Negligence), IV (Conspiracy), and V (Abuse of Process) were untimely. None described an injury sustained after June 4, 1975, more than six months before December 11, 1975, the date the complaint allegedly was served.
Count VI, however, alleged that the District (and others) had "intentionally and maliciously interfered with the conduct of [appellants'] business thereby causing the decline and ultimate termination of said business and the loss of prospective advantage therefrom." We therefore must decide whether the § 12-309 clock on Count VI began to run on the date appellants' business terminated (August 1975) or on some earlier date.[13]
"[T]he duty to provide notice under § [12-]309 attaches as soon as plaintiff suffers actionable injury." Pinkney v. District of Columbia, 439 F.Supp. 519, 525 *988 (D.D.C.1977).[14] Count VI alleges injuries that fall under the general rubric of "interference with contractual relations." W. Prosser, supra §§ 129-30; 4 Restatement (Second) of Torts §§ 766-66C (1979); see Carr v. Brown, D.C.App., 395 A.2d 79, 84 (1978) ("interference with prospective advantage"); Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan, D.C.App., 374 A.2d 284, 289 (1977) ("interference with business relations").[15] An essential element of this tort is damage. See id.; W. Prosser, supra § 129, at 948-49; § 130, at 953 & n. 95; 4 Restatement, supra § 766, Comment t; § 766A, Comment i; § 766B, Comment g; § 774A.
Appellants allege that this cause of action did not accrue until August 1975, when they terminated their business, because they could not assess their damages until that time. The service of their complaint in December 1975, appellants assert, was therefore within the six-month statutory notice period. We disagree.
From the face of the complaint, it is evident that appellants sustained business injury as a direct result, but only as a result, of the specific events alleged in Counts I-V. Appellants were well aware of appellees' allegedly tortious acts and have acknowledged actual and immediate damage from those acts, all of which occurred no later than June 4, 1975. See note 12 supra. Appellants' lack of full awareness of the seriousness of their injury does not excuse their failure to give notice of the fact of their injury to the District. Cf. Shehyn, supra at 1012 (cause of action for conversion accrues upon either wrongful taking or wrongful retention of property after rightful possession); Fitzgerald v. Seamans, 180 U.S.App.D.C. 75, 82, 553 F.2d 220, 227 (1977) (when appellant was aware of wrongs done at time of discharge from employment, fact of injury was sufficiently plain for accrual of cause of action for deprivation of civil rights and injury to reputation and career although precise nature and extent of injury had not yet developed); Brewster v. Woodward & Lothrop, Inc., 174 U.S.App.D.C. 164, 165, 530 F.2d 1016, 1017 (1976) (per curiam) (statute of limitations for false arrest and defamation runs from date of arrest, not from date of nolle prosequi before second trial). See also W. Prosser, supra § 15 (conversion). Because appellants' injury occurred at the latest on June 4, 1975, the December 5, 1975, complaint-served at the earliest on December 11, 1975-did not provide timely notice to the District under § 12-309.[16]

IV.
In summary, under D.C.Code 1973, § 12-309, the date on which the District receives written notice (through personal delivery mail, service of process, or otherwise) controls whether a claimant "has given notice" within six months from the date of injury. The latest injury mentioned in the notice letter from counsel was October 31, 1974. The complaint states no injury after June 4, 1975. It follows that neither the letter *989 (which the District received on May 2, 1975) nor the complaint (served no earlier than December 11, 1975) satisfied § 12-309. We therefore must affirm the trial court's entry of summary judgment in favor of the District of Columbia.
Affirmed.
NOTES
[1] D.C.Code 1973, § 12-309 provides:

An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Commissioner of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.
[2] The Chief of the Mayor's Correspondence Unit stated in an affidavit that the letter would have been logged before 9 a. m. on May 2 if it had been received on May 1, 1975.
[3] There is no indication in the record that the December 9 letter enclosed a copy of the complaint.
[4] The trial court concluded in part:

As regards the motion of the District of Columbia, it appears clear that the statutory requirements as to notice have not been complied with as regards those matters referred to in the complaint which did not occur at, or approximately at, the time set forth in the letter of notice, that is, October 31, 1974. Further, however, it appears that the notice was not given in timely fashion even with respect to events of October 31, 1974 and that no other acts of plaintiffs satisfied the requirements of D.C.Code 1973, § 12-309.
[5] After certification of the record and briefing of the appeal from the January 4 order (No. 11923 in this court), the District filed a motion to dismiss on the ground the order appealed from was not final because it did not resolve the case as to all defendants. We granted that motion on January 24, 1978. The DeKines filed the present appeal (No. 79-663) after the trial court dismissed the action against the remaining defendants. The parties adopted the record and briefs in the prior proceeding (No. 11923) for use in this appeal.
[6] Appellants' additional contention that the April 30 letter constituted adequate as well as timely notice of their claim of "a pattern and practice of unlawful interference with [their] business affairs" is without merit. The letter contained no mention of the "approximate time" or "place," let alone the "circumstances" of this injury, as required by D.C.Code 1973, § 12-309. See note 1 supra.
[7] Hirshfeld v. District of Columbia, 103 U.S. App.D.C. 71, 73, 254 F.2d 774, 776 (1958), while analyzing whether notice had been correctly addressed, indicated a belief that the District must receive notice within six months:

The factor that we think controls this case is not the address that appellant placed on her notice nor its initial receipt but the fact the notice was actually received in time by the office which, under Stone, can effectively receive such notice so as to satisfy the statutory requirements. . . . We do not hold that the statute is satisfied by address to the "Engineer Dept.," but rather that when the notice though improperly addressed was received by the proper office within the time limit set by the statute it was effective. [Emphasis added.]
[8] This general interpretation does not foreclose the possibility of excuse for a claimant who suffers a disability that prevents him or her from providing notice within the statutory period. See Hill v. District of Columbia, D.C.App., 345 A.2d 867, 869 & n. 3 (1975).
[9] Cf. Fox-Greenwald Sheet Metal Co. v. Markowitz Bros., Inc., 147 U.S.App.D.C. 14, 26 n. 72, 452 F.2d 1346, 1358 n. 72 (1971) (computation of limitation period excludes day on which cause of action accrues); Chambers v. Lucas, 59 App.D.C. 327, 328, 41 F.2d 299, 300 (1930) (method of computing time to appeal determination of tax deficiencies under applicable revenue act and tax board rules requires excluding day designated, i. e., date Commissioner mailed notice of determination, and including last day, i. e., date appellant filed redetermination petition). See generally Sheets v. Selden's Lessee, 69 U.S. (2 Wall.) 177, 190, 17 L.Ed. 822 (1864) ("The general current of the modern authorities on the interpretation of . . . statutes, where time is to be computed from a particular day or a particular event, . . . is to exclude the day thus designated, and to include the last day of the specified period.").
[10] See S. Freedman & Sons, Inc. v. Hartford Fire Ins. Co., D.C.App., 396 A.2d 195, 198-99 (1978); Shulman v. Miskell, 200 U.S.App.D.C. 1, 626 F.2d 173 (1980). See generally Marshall v. District of Columbia, D.C.App., 391 A.2d 1374, 1380 & n. 1 (1978); W. Prosser, The Law of Torts § 11 (4th ed. 1971).
[11] This court has not decided whether a complaint may satisfy the § 12-309 notice requirement, or whether written notice is a condition precedent to a claimant's right to file suit against the District. See Travelers Ins. Co. v. Haden, D.C.App., 418 A.2d 1078 at 1082 n. 6 (1980); Eskridge v. Jackson, D.C.App., 401 A.2d 986, 988 n. 5 (1979) (per curiam). Compare 18 E. McQuillin, supra at § 53.154 (compliance with statutory notice requirement generally condition precedent to suit) with id. at § 53.162 (prevailing view that service of complaint constitutes notice).
[12] The specific allegations were as follows:

a. On September 22, 1973, District officers, accompanied by Humane Society representatives, threatened Robert DeKine with arrest, forcing appellants to refuse business. [¶ 14 of December 5, 1975, Complaint.]
b. On September 26, 1973, unspecified persons seized several of appellants' horses and detained them at Rock Creek Park Horse Center for three days, resulting in the loss of five days' business. [¶s 15-16.]
c. On November 22, 1973, unspecified persons arrested Robert DeKine at Rock Creek Horse Stable on a charge of cruelty to animals. The government subsequently "no papered" the charges. [¶s 17-19.]
d. On May 7, 1974, the Washington Humane Society and its president issued false and misleading statements to the detriment of appellants' business. [¶s 20-22.]
e. During the week of October 25-31, 1974, District agents harassed, interrogated, and otherwise interfered with appellants' business. [¶ 23.]
f. On October 31, 1974, Robert DeKine was arrest for three offenses prosecutable by the Corporation Counsel, and District officers seized his horses, resulting in the loss of six days' business. [¶s 24-25.]
g. On November 5, 1974, the Washington Humane Society and two unspecified officers entered appellants' premises and seized and impounded two of their horses, resulting in the loss of 22 days' business. [¶s 26-27.]
h. On November 4, 197[4], District officers entered appellants' premises and destroyed their business property. [¶ 28.]
i. On December 6, 1974, District officers and others broke into appellants' property, seized two horses, and arrested Robert DeKine for cruelty to animals, resulting in the loss of three days' business. [¶s 29-30.]
j. On April 6, 1975, District officers and others seized several of appellants' horses and arrested an employee, resulting in the loss of 20 days' business. [¶s 31-32.]
k. On May 21, 1975, the president of the Washington Humane Society photographed and interfered with treatment of a horse that had been involved in an accident. [¶ 33.]
l. On May 26, 1975, District officers and other detained appellants' employees, causing loss of business. [¶ 34.]
m. On June 4, 1975, District officers and others arrested Robert DeKine and seized three horses and a dog belonging to appellants. [¶ 35.]
n. On June 10, 1975, the June 4 charges were "no papered," and the seized animals were returned. [¶ 36.]
The specific allegations are preceded by general allegations which add nothing to our evaluation of timeliness: paragraph 12 lists the following acts as part of the Humane Society's pattern of harassment and intimidation designed to drive appellants out of business: (a) making false complaints to law enforcement officials; (b) causing the false arrest of Robert DeKine and his employees; (c) seizing, detaining, and destroying appellants' property; (d) disseminating false and misleading statements concerning appellants' treatment of animals under their control.
According to paragraph 13, District officials allegedly participated in the foregoing activities by: (a) arresting Robert DeKine without justification and legal process; (b) seizing his property without justification or process; and (c) harassing and intimidating appellants and preventing them from carrying out normal business functions.
[13] For purposes of this analysis, we assume the "August 1975" date satisfied the § 12-309 "approximate time" requirement, see note 1 supra, and that Count VI alleged a separate tort theory for recovery, not merely an additional type of damage sustained from the acts comprising Counts I-V. See generally Carr v. Brown, D.C. App., 395 A.2d 79, 82-85 (1978); Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan, D.C.App., 374 A.2d 284, 288-90 (1977); W. Prosser, supra §§ 129-30.
[14] Cf. S. Freedman & Sons, Inc., supra at 198 (statute of limitations begins to run from time all elements of cause of action exist); Shehyn, supra at 1013 (statute of limitations begins to run, as to a tort, on the date of injury).
[15] Although this tort encompasses a number of types of injuries, see W. Prosser, supra §§ 129-30; 4 Restatement, supra §§ 766-66C, we need not consider here into which subcategories appellants' injuries fall. We assume that appellants' allegations satisfy one or more of these interference theories.
[16] Appellants' argument that Count VI alleges a "continuing tort" is unavailing. Appellants recognize that "[t]o come within this `continuing tort' exception to the triggering of the limitation period, there must be (1) a continuous and repetitious wrong, (2) with damages flowing from the act as a whole rather than from each individual act, and (3) at least one injurious act must occur within the limitation period." Appellants' Brief at 17. There is no support on the face of the complaint for the assertion that the Count VI injury flowed from the act as a whole. Moreover, the last alleged injurious act occurred on June 4, earlier than the six-month limitation period ending December 11. Cf. Fitzgerald, supra, 180 U.S.App.D.C. at 81-82, 553 F.2d at 226-27 (statute of limitations not tolled during civil service appeal because wrong had been done at time of discharge from employment, although extent of injury became clear only after appeal).