**Marion F. DAY and Joann J. Day, Plaintiffs–Appellants,**

v.

**The MEMORIAL HOSPITAL OF GUYMON; L.L. Lowery, M.D., individually; L.L. Lowery, M.D., a professional corporation; R.H. Cox, Jr., M.D., individually; and R.H. Cox, Jr., a professional corporation, Defendants–Appellees.**

No. 85–1890.

United States Court of Appeals, Tenth Circuit.

April 14, 1988.

Robert Behlen of Lampkin, McCaffrey & Tawwater, Oklahoma City, Okl. (Larry A. Tawwater, with him on the brief), for plaintiffs-appellants.

G. Scott Ray of Foliart, Huff, Ottaway & Caldwell, Oklahoma City, Okl. (Glen D. Huff, with him on the brief), for defendants-appellees.

Before HOLLOWAY, Chief Judge, ANDERSON, Circuit Judge, and WESLEY E. BROWN, Senior District Judge.[*]

WESLEY E. BROWN, Senior District Judge.

This case arises out of a medical malpractice action against Memorial Hospital of Guymon, Oklahoma. Plaintiff was injured on January 18, 1981, and sought treatment on that day at Memorial Hospital. Approximately two years later, on January 14, 1983, plaintiff brought an action for negligence against the hospital and other defendants.

The district court granted Memorial Hospital's motion for summary judgment against the plaintiff. Summary judgment was based on plaintiff's failure to comply with the notice provision of the Oklahoma Political Subdivision Tort Claims Act, 51 Okla.Stat.Ann. Sec. 156(B) (West 1979). That section provided: "A claim against a subdivision shall be forever barred unless notice thereof is filed with the clerk of the governing body of the political subdivision within one hundred twenty (120) days after a loss occurs."[1] The district court found

---

[*] Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation.

[1] 51 Okla.Stat.Ann. Sec. 156(B) has recently been amended. The amended statute now requires that claims against a political subdivision be presented within ninety days of a loss. If a claim is not presented within ninety days but is presented within one year, any judgment on the claim will be reduced by ten percent. If notice of the claim is not presented within one year of the loss, the claim is forever barred. 51 Okla.Stat.Ann. Sec. 156(B) (West 1988). The amended statute does not apply to the present action.

that the hospital was a political subdivision under Oklahoma law, and was therefore entitled to notice under the Tort Claims Act. It is undisputed that the plaintiff did not comply with Sec. 156(B).

Plaintiff-appellant now raises four arguments challenging the district court's application of 51 Okla.Stat.Sec. 156(B) to bar his claim. First, appellant contends that Sec. 156(B) is unconstitutional because it violates the equal protection guarantees of both the Oklahoma Constitution and the United States Constitution. Second, appellant argues that the statute violates Article 5, Section 57 of the Oklahoma Constitution because the effect of the notice provision was not clearly expressed in the title of the statute. Third, appellant argues that the Oklahoma Political Subdivision Tort Claims Act was not intended to apply to hospitals such as Memorial Hospital. Fourth, appellant argues that Memorial Hospital waived any right to statutory protection under the Act by purchasing liability insurance.

■ Plaintiff's first argument is that Sec. 156(B) violates the equal protection guarantees of the Oklahoma Constitution and the Fourteenth Amendment of the U.S. Constitution. Plaintiff points out that Sec. 156(B) does not treat tort victims equally, since victims of government negligence must give notice of their tort claim. There is no such requirement for victims of "private" negligence. Plaintiff argues that this treatment is unconstitutional because there is no rational basis for treating government tort victims differently than other tort victims.

"Notice of claim" provisions similar to Sec. 156(B) have been challenged extensively in state courts. There is a split of authority as to whether or not these provisions violate equal protection, but a majority of states hold that such statutes are valid. *See* Annotation at 59 A.L.R.3d 93, 109, *Notice of Tort Claim Against Municipality.*

Plaintiff's argument that Sec. 156(B) violates the Oklahoma Constitution is foreclosed by *Reirdon v. Wilburton Board of Education,* 611 P.2d 239 (Okla.1980), in which the Oklahoma Supreme Court stated that

Sec. 156(B) did not violate the constitutional guarantee of equal protection. *Id.* at 240. In discussing Sec. 156(B), the court stated:

[A]bsent a suspect classification, or an infringement upon a fundamental right, both of which are absent here, the statute must be measured on the basis of whether it rationally furthers a legitimate state interest. We find that it does. The notice provision furthers legitimate state interests by fostering a prompt investigation while the evidence is still fresh; the opportunity to repair any dangerous condition, quick and amicable settlement of meritorious claims; and preparation of fiscal planning to meet any possible liability.

*Id.* (footnotes omitted). *See also Black v. Ball Janitorial Service, Inc.,* 730 P.2d 510 (Okla.1986). Plaintiff attempts to distinguish *Reirdon* by pointing out that the *Reirdon* case involved a claim against a school board, while the present case involves a county-owned hospital. This distinction is immaterial, however, since both entities are political subdivisions under Oklahoma law. Accordingly, we must reject plaintiff's argument that Sec. 156 violates the equal protection guarantee of the Oklahoma Constitution.

We also find that the notice provision does not violate the equal protection guarantee of the Fourteenth Amendment. In *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1960), the Supreme Court stated:

[T]he Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. States legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

*Id.* at 425–26, 81 S.Ct. at 1105. *See also McGinnis v. Royster,* 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973) (Legislative distinctions must be respected if the distinctions drawn have some basis in practical experience or if some legitimate state interest is advanced); *Artez v. Mulcrone,* 673 F.2d 1169, 1171 (10th Cir.1982) (A legislative classification that does not involve a fundamental right or an inherently suspect class is permissible if it has some rational basis or advances a legitimate state interest). Because the present case involves neither a suspect class nor a fundamental right, we examine the statute only to see if it rationally furthers a legitimate state interest. *See e.g., Lacey v. Bekaert Steel Wire Corporation,* 799 F.2d 434, 436 (8th Cir.1986) (Because legislative classification of tort victims was not based upon a suspect classification and the right to bring a tort suit against the government is not fundamental, the statutory scheme need only have an underlying rational basis).

Notice of claim provisions have been found to serve several legitimate state interests. Most commonly the statutes are said to allow: a prompt investigation while the evidence is still fresh; the opportunity to repair or remedy dangerous conditions; quick and amicable settlement of meritorious claims; and preparation of fiscal planning to meet any possible liability. *Reirdon, supra.* Other purposes include the discouragement of unfounded claims, minimizing the amount of damages and litigation costs, and allowing continued provision of local services and the maintenance of fiscal stability. *Faucher v. City of Auburn,* 465 A.2d 1120, 1125 (Me.1983); *Sadler v. New Castle County,* 524 A.2d 18 (Del.Sup.Ct.1987). These are legitimate government interests which conceivably promote the general welfare by ensuring the stability of government entities. Tort claims against the government have the potential to affect the orderly provision of necessary services to the general public. Given these factors, it cannot be said that the enactment of the notice requirement was an irrational means of pursuing legitimate state objectives. *Oquendo v. Insurance Company of Puerto Rico,* 388 F.Supp. 1030, 1033–36 (D.P.R.1974) (Ninety-day notice provision did not violate the Equal Protection Clause of the U.S. Constitution). The requirement that tort victims give notice to the government within one hundred and twenty days of their injury may serve to reduce spurious claims and to allow the government to prepare its defense. Such a provision may further ensure that the proper officials are notified of dangerous conditions and are aware of their duty to act.

Our conclusion is further supported by the Supreme Court's ruling in *Agost v. Idaho,* 423 U.S. 993, 96 S.Ct. 419, 46 L.Ed.2d 367 (1975), in which the Court summarily dismissed an appeal "for want of a substantial federal question." The appeal was from the decision in *Newlan v. State,* 96 Idaho 711, 535 P.2d 1348 (1975), and the *Newlan* case shows that the same equal protection raised in that case is now being raised by the plaintiff Day. As such, the Supreme Court's dismissal of the case for want of a substantial federal question is a decision that is binding in the lower courts until such time as the Supreme Court informs us otherwise. *Hicks v. Miranda,* 422 U.S. 332, 344–45, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223, 236 (1975).

Plaintiff argues that it is impermissible to make a distinction between government entities and private parties. Such a distinction may be made, however, without violating the Equal Protection Clause. *Shoemaker v. Aldmor Management, Inc.,* 249 Ga. 430, 291 S.E.2d 549 (1982) (Sufficient differences exist between governmental and private tortfeasors to justify the legislature in requiring that notice be given to one and not the other). *See also Nored v. Blehm,* 743 F.2d 1386, 1387 (9th Cir.1984) (Equal Protection not violated by differentiating between government and private parties in a statute of limitations).

The cases that have held notice provisions unconstitutional have done so by concluding that a legislative waiver of immunity signified an intent by the legislature to treat government tortfeasors the same as other tortfeasors. *See e.g., Turner v. Staggs,* 89 Nev. 230, 510 P.2d 879, 882

(1973). In Oklahoma and most other states, though, the statutory waiver of immunity is subject to certain exemptions and conditions. The fact that the Oklahoma legislature chose to adopt a notice requirement refutes the argument that the legislature intended to treat the government identically to other tortfeasors. As one commentator noted:

It must be clear that the legislature had no intention whatever to "put government units on an equal footing with private tortfeasors"; such an intention is irreconcilable with the specific definition and circumscription of the liabilities recognized by the statute. Moreover, there are real and vital differences between the situations of governmental units and private parties as potential tort defendants.... No private party has a tort responsibility comparable to the government unit's responsibility for injuries allegedly caused by defective or unsafe conditions of highways.... Taking into account the extent of the government unit's liability exposure where public ways and buildings are concerned, and of the difficulties in keeping in current touch with all those conditions that might become a source of liability, surely there is nothing constitutionally unreasonable about a notice requirement that is not applicable to other tortfeasors and other claimants.

*Budahl v. Gordon & David Associates,* 287 N.W.2d 489 (S.D.1980) (citing Cooperrider, *The Court, The Legislature, and Governmental Tort Liability in Michigan,* 72 Mich.L.Rev. 187, 272 (1973)).

The right to sue the government in Oklahoma is a right granted by statute. As such, the legislature may place reasonable restrictions on that right. The requirement that claimants give notice of their claim is a reasonable restriction that applies equally to all persons wishing to sue the government. We conclude that Sec. 156(B) does not violate the Equal Protection Clause of the Fourteenth Amendment and may bar the plaintiff's claim against Memorial Hospital. (See the following cases, holding that failure to give notice of a claim bars an action against a government entity: *Ez-*

*agui v. Dow Chemical Corporation,* 598 F.2d 727, 737 (2nd Cir.1979); *Kamani v. Port of Houston Authority,* 702 F.2d 612, 615 (5th Cir.1983); *Saldivar v. Cadena,* 622 F.Supp. 949 (D.Wis.1985); *Oquendo v. Insurance Company of Puerto Rico,* 388 F.Supp. 1030, 1033–36 (D.P.R.1974)).

Plaintiff also raises the argument that justice requires reversal in this case because the 120–day time limit expired before he could have discovered his injury. This argument is unpersuasive, though, in light of the fact that after plaintiff discovered the alleged malpractice he made no attempt to comply with the notice requirement of Sec. 156(B).

■ Plaintiff's next contention is that the notice provision violates Art. 5, Sec. 57 of the Oklahoma Constitution. That section states: "Every act of the Legislature shall embrace but one subject which shall be clearly expressed in its title...." Plaintiff argues that the effect of the 120–day notice requirement was not clearly expressed in the title of the Oklahoma Political Subdivision Tort Claims Act and is therefore unconstitutional. We again must reject plaintiff's argument.

The title of the Tort Claims Act provided in part:

An act relating to torts; providing for a political subdivision tort claims act; providing for a short title; defining terms; specifying areas of and limits of liability of certain political subdivisions; excluding liability under certain conditions; providing claim and judgment collection procedures; authorizing indemnification of employees by political subdivisions; providing procedures for employee indemnification in certain civil rights actions; providing jurisdiction venue and method of service and other procedural matters....

51 Okla.Stat.Supp.1979 Sec. 151 *et seq.* We believe the title of the Act meets the requirements of Art. 5, Sec. 57, because the title provides notice that there are claim procedures for bringing an action against a political subdivision. Article 5, Sec. 57 must be liberally construed so as not to

cripple legislation. *Gibson Products Company v. Murphy,* 186 Okl. 714, 100 P.2d 453, 455 (1940). Furthermore, that section does not require that a title contain a complete index to all the details of the Act. *Id. Cf. Coe v. States Election Board,* 203 Okl. 356, 221 P.2d 774 (1950) (Title that provided for "An Act Relating to Elections" was broad enough to include run-off election procedures). *See also Housewright v. City of LaHarpe,* 51 Ill.2d 357, 282 N.E.2d 437 (1972) (A notice of claim provision in a tort claims statute did not violate the constitutional requirement that legislative acts embrace only one subject in their title). Accordingly, the trial court's ruling on this issue is upheld.

■ Plaintiff contends on appeal that Memorial Hospital was not a political subdivision under Oklahoma law, and therefore was not entitled to notice of the plaintiff's claim. We disagree. Under Oklahoma law, a political subdivision was defined as:

a. a municipality;
b. a school district;
c. a county; or
d. a public trust where a city, town school district or county is a beneficiary;

and all their institutions, instrumentalities or agencies. 51 Okla.Stat.Supp.1979 Sec. 152(6). It is undisputed in this appeal that Memorial Hospital is owned by Texas County, Oklahoma. The hospital is under the authority of a board of control whose members were appointed by the Texas County Commission. As such, the hospital is a county institution and qualified as a political subdivision under the statute. Indeed, plaintiff did not even raise the argument in the trial court that the hospital was not a political subdivision under Sec. 152(6). Accordingly, we uphold the trial court's ruling on this issue.

■ Plaintiff's final argument is that Memorial Hospital waived its right to immunity and the right to receive notice of a claim by purchasing liability insurance. We agree with the trial court's conclusion, however, that the hospital's purchase of insurance had no effect on the 120-day notice requirement of Sec. 156(B).

Plaintiff relies on *Herweg v. Board of Education of Lawton Public Schools,* 673 P.2d 154 (Okla.1983), to support his argument. In *Herweg,* the Oklahoma Supreme Court held that a subdivision that would normally be immune from suit impliedly waived its right to immunity by purchasing insurance. *Id.* at 156. This rule has no effect on the present case, however, because Memorial Hospital is not immune from suit. The hospital's immunity has been waived by the Oklahoma Political Subdivision Tort Claims Act. 51 Okla.Stat. Supp.1979 Sec. 153. There is no room for the court to imply the consent to be sued when the legislature has expressly provided for such consent. The hospital had a right to insure itself against claims brought against it; in fact it was authorized to do so by the legislature. The fact that the hospital purchased insurance, though, does not abrogate the procedures set forth by the legislature for bringing claims against a political subdivision.

The judgment of the district court is AFFIRMED.