459 A.2d 338

**William JAMES, Appellant,**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION
AUTHORITY.**

Superior Court of Pennsylvania.

Argued April 22, 1982.

Filed March 11, 1983.

Reargument Denied May 24, 1983.

Petition for Allowance of Appeal Granted Sept. 8, 1983.

George J. O'Neill, Philadelphia, submitted a brief on behalf of appellant.

Norman Hegge, Jr., Philadelphia, for appellee.

Before WICKERSHAM, BROSKY and WIEAND, JJ.

BROSKY, Judge:

The Metropolitan Transportation Authority Act provided, *inter alia*, that those suing such authorities had to give notice within six months of the accrual of the action.[1] This provision is challenged here on constitutional grounds. Despite the fact that appellant failed to notify the Attorney General of the constitutional challenge at the trial court level,[2] we choose to reach the issue on its merits here. We hold that the statute is unconstitutional.

The background of this case is as follows. On May 7, 1975, plaintiff-appellant, James, allegedly slipped on debris littering the steps of a SEPTA station stairwell.[3] Among his injuries was a spiral, comminuted fracture of his right leg.

The only evidence that James had given notice of his claim against SEPTA within the six-month period is an answer he gave to an interrogatory to that effect. His complaint was filed in 1977, well after the six-month period. After holding an evidentiary hearing on the matter, Judge Braig held that James had not met the six-month notice of claim requirement and entered summary judgment in favor of SEPTA.[4]

While at the trial court level, James also raised a challenge to the constitutionality of the statute. He failed, however, to notify the State Attorney General of this challenge as Pa.R.C.P. 235(a) mandates. The trial court failed to address the constitutional issue in its opinion.

On appeal, the only issue raised is the constitutionality of this now-repealed statute. Notification of the constitutional challenge at this appellate level was given to the Attorney General in accordance with Pa.R.A.P. 521(a). This notifica-

1. 66 P.S. § 2036.

2. Pa.R.C.P. 235(a).

3. SEPTA is an authority covered by the six-month notice provision, *supra*, n. 1.

4. That issue is not raised on appeal.

tion was sent on February 2, 1982 and a reply from the Attorney General's office dated March 2, 1982, states: "If no notification is received from this Office within 30 days of the date of this letter, please assume that the Commonwealth will not be entering its appearance in these matters." To date, more than six months after that letter, the Attorney General has not joined this case.

Usually, a rule is a rule. Rule 235, supra, requires that the Attorney General be notified of a constitutional challenge to a statute at the trial court level. Normally, noncompliance with this rule would mandate our quashing of this appeal. *Irrera v. SEPTA,* 231 Pa.Super. 508, 331 A.2d 705 (1974), involved a constitutional challenge to this same statute and also involved a failure to comply with this same rule.[5] The "issue was deemed abandoned or waived." *Irrera,* supra, 231 Pa.Superior at 515, 331 A.2d at 708.

In the case before us, appellant did fail to comply with Rule 235; but he did raise the constitutional issue below, it was not addressed by the trial court, he did notify the Attorney General of the appellate proceedings, and the Attorney General did fail to enter the case.

This same configuration of facts existed in the case of *Commonwealth v. Stein,* 487 Pa. 1, 406 A.2d 1381 (1979). There, considering those particular circumstances, Justice Nix held that the noncompliance with Rule 235 was not "a basis for refusing to consider the" constitutional issue.[6] *Stein,* supra, 487 Pa. at 8, 406 A.2d at 1384.

5. In addition to not complying with Rule 235, Irrera had not even pled the constitutional issue at the trial court level. In the instant case, appellant did raise the constitutional issue below.

6. The respondent next contends that petitioner's failure to notify the Attorney General of the Commonwealth of a constitutional challenge to an Act of Assembly in a proceeding in which the Commonwealth is not a party in violation of Pa.R.C.P. 235(a) permits our consideration of petitioner's constitutional claims. The rule requires "prompt" notification of the Attorney General. Under the circumstances of this case in which the court below proceeded forthwith to the adjudication and disposition of the case without addressing itself to the constitutional questions presented by petitioner and where the Attorney General was duly notified of petition-

■ We are willingly guided by Justice Nix's thoughts on this matter, even though they are not in this case binding precedent.[7] Under the circumstances occurring here, the noncompliance with Rule 235 is not fatal and we will address the merits of the constitutional challenge.

Appellant contends that the notice of claim requirement violates the Equal Protection clause of the Fourteenth Amendment to the U.S. Constitution.[8] The provision before us states:

Limitation of actions against authority

Within six months from the date that any injury was received, or any cause of action accrued, any person who is about to commence any civil action in any court against the authority for damages on account of any injury to his person shall file in the office of the secretary of the board, and also in the office of the chief counsel for the authority, either by himself, his agent, or attorney, a statement in writing, signed by himself, his agent, or attorney, giving the name of the person to whom the cause of action has accrued, the name and residence of the person injured, the date, and about the hour of the accident, the place or location where the accident occurred, and the name and address of the attending physician, if any. If the notice provided for this section is not filed as provided, any civil action commenced against the

er's claims on appeal of the matter to the Superior Court and to this Court, and neither sought to intervene in this matter nor to raise the issue of lack of prompt notification as a reason for his decision not to intervene, we cannot accept this as a basis for refusing to consider the same.
*Stein,* supra, 487 Pa. at 8–9, 406 A.2d at 1384.

7. Justice Nix wrote the above for the court, with Justice Roberts concurring and Justice Larsen joining that concurrence. Justices O'Brien and Manderino concurred in the result and Chief Justice Eagen dissented. Thus, three justices of the six Justices participating supported the reasoning of the above quotation and five approved of the result.

8. Article I, § 11 of the Pennsylvania Constitution is also said to be violated. Our disposition of the Equal Protection claim makes it unnecessary for us to reach this issue.

authority more than six months after the date of injury, shall be dismissed and the person to whom any such cause of action accrued for any personal injury shall be forever barred from further suing.[9]

The first step in any Equal Protection analysis is to determine which of three standards will be used.[10] The most minimal of the standards merely requires that the classification be rationally connected to a legitimate governmental purpose. The most stringent standard, strict scrutiny, is used to review actions affecting fundamental rights or using suspect categories. There is also a third, intermediate standard, often referred to as heightened scrutiny. This intermediate standard will be employed here.

The selection of the heightened scrutiny standard is determined by its use in a similar context by this Commonwealth's Supreme Court. In *Moyer v. Phillips*, 462 Pa. 395, 341 A.2d 441 (1975), Chief Justice Jones used this standard to review the exclusion of slander and libel actions from surviving the death of plaintiff or defendant. As stated in that case, the applicable standard is as follows.

The Equal Protection Clause of both constitutions does not deny the State the power to treat different classes of persons in different ways, but does deny the right to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of the particular statute. The classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the

9. Metropolitan Transportation Authorities Act of 1963, Act of August 14, 1963, P.L. 984, § 36, 66 P.S. § 2036, Repealed April 28, 1978, P.L. 202, No. 53, § 2(a) (1371), effective June 27, 1978.

10. Two law review notes have dealt with notice of claim requirements and Equal Protection: Note, Notice of Claim Provisions: An Equal Protection Perspective, 60 Cornell L.Rev. 417 (1975); Note, Delay in Notice of Tort Claim Against a Government Agency, 20 Clev.St.L.Rev. 23 (1971). See also Annotation, 59 A.L.R.3d 93, Sections 5 and 6.

legislation so that all persons similarly circumstanced shall be treated alike.

*Moyer,* supra, 462 Pa. at 400–1, 341 A.2d at 443.

The high courts of other states have also applied heightened scrutiny in cases which were even more directly on point with the one before us. Noting that "the right to recover for personal injuries is ... an important substantive right," the New Hampshire Supreme Court used this same intermediate standard in reviewing another notice of claim requirement.[11] *Carson v. Maurer,* 120 N.H. 925, 424 A.2d 825 at 830 (N.H., 1980). In another notice of claim case the Supreme Court of Washington stated:

> The right to be indemnified for personal injuries is a substantial property right, not only of monetary value but in many cases fundamental to the injured person's physical well-being and ability to continue to live a decent life. Statutory classifications which substantially burden such rights as to some individuals but not others are permissible under the equal protection clause of the Fourteenth Amendment only if they ... [meet the heightened scrutiny test.]

*Hunter v. N. Mason High School,* 85 Wash.2d 810, 539 P.2d 845 at 848 (Wash., 1975) (a four month notice of claim requirement).

■ In order to apply the heightened scrutiny test, the purpose of the statute must be established. This court has held that the purpose of the § 2036 notice requirement "... is to provide the defendant with the opportunity to make timely investigation and avoid the difficulty of defending against stale and fraudulent claims." *Dubin v. Southeastern Pennsylvania Transportation Authority,* 219 Pa.Super. 476, at 478, 281 A.2d 711, at 712 (1971).

Next, the classification itself must be identified. Here, the classification, or grounds for differential treatment is whether or not the defendant is a transportation authority;

---

**11.** The statute reviewed in *Carson* required notice 60 days before commencing an action.

or, looked at from the other side, whether or not the plaintiff is suing a transportation authority.

Having determined the applicable Equal Protection standard and identified the statutory purpose and classification, it remains to apply the standard to the statute in question.

Is this classification "reasonable"; does it have a "fair relation" to the purpose of the legislation? We think not. The Supreme Court of Appeals of West Virginia also held that a similar notice requirement was "neither reasonable nor fair." Though the notice time period was 30 days, the statements about it are entirely apropos here.[12] "Few laymen, unversed in the law, know within thirty days of their injury whether they will sue; fewer yet know of the thirty-day notice." *O'Neil v. City of Parkersburg,* 237 S.E.2d 504 at 508 (W.Va., 1977). Even at this level the statute is patently unfair, but when viewed in terms of its disproportionate effect upon certain segments of our society, this statute's unreasonableness is even more apparent.

While the differential impact of a statute along economic lines is not, *per se,* an Equal Protection violation, such an impact can be relevant in evaluating a statute's fairness and reasonableness.

> Ordinarily the affluent and educated tort victim has a retained or family attorney. His attorney may ethically—and probably does—come forward to inform his client of the notice requirement. Iowa Code of Professional Responsibility for Lawyers, Ethical Canon 2–3. It is the poor, uneducated tort victim, without counsel and unacquainted with lawyers, who naively assumes he will be compensated and unknowingly permits the notice time to lapse.

*Lunday v. Vogelmann,* 213 N.W.2d 904, 911–12 (Iowa, 1973) (Reynoldson, J., dissenting) (requiring an action to

---

12. We note that some of the cases holding a notice of claim provision unconstitutional involved a six-month time period—as does the statute before us. See *Turner,* infra; *Reich v. State,* 43 Mich.App. 284, 204 N.W.2d 226 (Mich.App., 1972); *King v. Baskin,* 89 Nev. 290, 511 P.2d 115 (Nev., 1973); and *Jenkins v. State,* 85 Wash.2d 883, 540 P.2d 1363 (Wash., 1975) (this last a five-month provision).

commence within three months, unless notice had been given within 60 days).

On the same subject, the Washington Supreme Court observed: "By increasing the demands on the potential plaintiff, these statutes grossly magnify the unfair impact of the unequal distribution of legal counsel and knowledge between rich and poor." *Hunter*, supra, 539 P.2d at 848. The increased demands on the potential plaintiff imposed by § 2036 are unnecessarily precise and duplicative. Notice must be given to both "the office of the secretary of the board, and also in the office of the chief counsel for the authority." It is clear that this notice of claim statute is "neither reasonable nor fair."

Another allied requirement of the heightened scrutiny test is that there be "a fair and substantial relation to the object of the legislation." This determination can be made by comparing the public interest furthered and the private right restricted. *Carson*, supra, 424 A.2d at 831. Due to the particular history of state constitutional cases in New Hampshire, (whose Supreme Court issued *Carson*), the test there is a weighing of the respective public and private interests affected. That is not our intention here. Rather than determining which outweighs the other, we are merely ascertaining whether or not the public and private interests involved are grossly disproportionate. We conclude that they are.

The public interest in investigating claims is poorly served by this statute. The claims affected by this statute are typically like the one *sub judice*, actions in tort. Providing notice to the Authority up to five months and 29 days after James slipped on debris littering a stairwell would hardly have permitted a timely investigation of the condition of the steps at the pertinent time. (Such a timely investigation would normally be activated by the Authority personnel involved—the bus driver, for example—and would be undertaken by the Authority's investigators.)

Also, the Authority would receive adequate notice to investigate and prepare its case through normal service of

process. The plaintiff also has the burden of proof in any action. This burden of proof and our whole adversary system act to defeat fraudulent claims. The passage of time is also at least equally detrimental to the plaintiff in forming his case. Thus, not only is the notice provision ineffective, but other factors operate independently to serve the stated objective. The former leads us to conclude that there is not a substantial relation to the object of the legislation; the latter is relevant to the comparison between the public interest served and the private right restricted.

The nature of this restricted private right is readily apparent. Failure to comply with the notice requirement works a forfeiture of any right to recover that he might have established in court. This result could be catastrophic to a severely injured individual in real need of monetary recovery.

Thus, the private right is most substantial and the public interest is minimal, since it is inadequately furthered by the provision. This comparison was accurately described by the Nevada Supreme Court. "... claim statutes serve no real beneficial use but they are indeed a trap for the unwary." *Turner v. Staggs,* 89 Nev. 230, 510 P.2d 879 at 882 (Nev., 1973) (citations omitted).

It is apparent that the classification has neither a fair nor a substantial relation to the statute's objective.

Another element of the heightened scrutiny test requires that the classification not be "arbitrary ... so that all persons similarly situated shall be treated alike." We conclude that the notice of claim provision also fails to meet this standard. The Supreme Court of Michigan properly disposed of this point in a 1972 case:

> Just as the notice requirement by its operation divides the natural class of negligent tortfeasors, so too the natural class of victims of negligent conduct is also arbitrarily split into two subclasses: victims of governmental negligence who must meet the requirement, and victims of private negligence who are subject to no such requirement.

*Reich v. State Highway Dept.*, 386 Mich. 617, 194 N.W.2d 700 at 702 (Mich., 1972) (a two month notice requirement). See also *O'Neil*, supra, 237 S.E.2d at 507–8; *Hunter*, supra, 539 P.2d at 847; and *Turner*, supra, 510 P.2d at 882.

Finding the notice of claim provision unconstitutional under the Equal Protection clause, we reverse the summary judgment and remand for further proceedings on the merits of James' action in trespass. This court relinquishes its jurisdiction in this case.

WICKERSHAM, J., concurs in result.

WIEAND, J., files dissenting opinion.

WIEAND, Judge, dissenting:

The majority has concluded that the notice requirement contained in the Metropolitan Transportation Authorities Act of August 14, 1963, P.L. 984, § 36, 66 P.S. 2036,[1] constitutes a violation of the equal protection clause of the Fourteenth Amendment and is unconstitutional. In order to achieve this result, the author of the lead opinion has employed the intermediate or "heightened scrutiny" level of

1. The Metropolitan Transportation Authorities Act of 1963 was repealed by Section 2 of the Judiciary Act Repealer Act of April 28, 1978, P.L. 202, No. 53, § 2(a) [1371]. The notice requirement for claims against metropolitan transportation authorities is not contained in the Act of October 5, 1980, P.L. 693, No. 142, § 221(i)(1); 42 Pa.C.S. § 5522(a) which provides, inter alia:
(a) Notice prerequisite to action against government unit.—
   (1) Within six months from the date that any injury was sustained or any cause of action accrued, any person who is about to commence any civil action or proceeding within this Commonwealth or elsewhere against a government unit for damages on account of any injury to his person or property under Chapter 85 (relating to matters affecting government units) or otherwise shall file in the office of the government unit, and if the action is against a Commonwealth agency for damages, then also file in the office of the Attorney General, a statement in writing, signed by or in his behalf, setting forth:
      (i) The name and residence address of the person to whom the cause of action has accrued.
      (ii) The name and residence address of the person injured.
      (iii) The date and hour of the accident.
      (iv) The approximate location where the accident occurred.
      (v) The name and residence or office address of any attending physician.

review. Because I am persuaded by applicable authority that the standard of review utilized is incorrect and because I disagree with the result achieved, I must respectfully, but vigorously, dissent.

William James, the appellant, was injured on May 7, 1975 while descending the subway steps at Fifth and Market Streets in Philadelphia, allegedly as a result of slipping on an old candy wrapper partially coated with chocolate. Suit was instituted against SEPTA by praecipe for summons on May 9, 1977. Answers to SEPTA's interrogatories and also appellant's complaint were filed on August 24, 1977. Appellant's attorney died on February 13, 1978, and present counsel entered his appearance on July 24, 1978. SEPTA's answer contained new matter which alleged the affirmative defense of failure to provide notice as required by Section 36 of the Act of 1963. Appellant's reply denied that notice was lacking, averring that "[a]s indicated by plaintiff's answers to interrogatories No. 19, defendant was notified of the accident by Murry Powlen, Esquire in June, 1975. Mr. Powlen died February 13, 1978." Appellant's reply also averred that the notice requirement contained in Section 36 of the Act of 1963 was unconstitutional.

Appellee filed a motion for summary judgment on August 22, 1978, contending that the absence of notice constituted a complete bar to appellant's cause of action. In support thereof, appellee relied upon an affidavit of Elmer Hackett, Jr. which averred that no employee of SEPTA had received notice of appellant's injuries as required by the Metropolitan Transportation Authorities Act of 1963. Appellant filed an answer to the motion for summary judgment which denied that SEPTA had not been notified, incorporated by reference the answers to interrogatories and objected to the adequacy of the Hackett affidavit. By order dated October 23, 1978, Judge White denied appellee's motion for summary judgment because the issue of fact concerning notice to SEPTA remained unresolved. The case was referred to a board of arbitration, which, after hearing, entered an award in favor of appellant and against SEPTA for three thousand

dollars. An appeal was filed, and the case was listed for trial before the Honorable Joseph P. Braig. On July 27, 1981, Judge Braig held an evidentiary hearing, but the notes of testimony therefrom have not been transcribed. Judge Braig determined that notice had not been given to SEPTA and granted appellee's motion for summary judgment. The opinion of the trial court states that summary judgment was entered in favor of appellee because the required notice had not been given. William James filed an appeal from this summary judgment. In doing so he has not challenged the trial court's finding that notice was not given. His only contention on appeal is that the notice requirement of the Act of 1963 is unconstitutional. His constitutional challenge is based on the equal protection clause of the Fourteenth Amendment of the Constitution of the United States and also on Article I, Sections 11 and 26 of the Pennsylvania Constitution.

When reviewing a challenge to the constitutionality of a lawfully enacted statute, this Court must be guided by the well established principle that a statute is cloaked with a strong presumption of constitutionality. The appellant bears the burden of demonstrating that the legislation "clearly, palpably and plainly violates the Constitution." *Hayes v. Erie Insurance Exchange*, 493 Pa. 150, 155, 425 A.2d 419, 421 (1981) citing *Singer v. Sheppard*, 464 Pa. 387, 393, 346 A.2d 897, 900 (1975) and *Tosto v. Pennsylvania Nursing Home Loan Agency*, 460 Pa. 1, 16, 331 A.2d 198, 203 (1975). Accord: *Snider v. Thornburgh*, 496 Pa. 159, 166, 436 A.2d 593, 596 (1981); *Tsarnas v. Jones & Laughlin Steel Corporation*, 488 Pa. 513, 522, 412 A.2d 1094, 1099 (1980); *Milk Control Commission v. Battista*, 413 Pa. 652, 659, 198 A.2d 840, 843 (1964), appeal dismissed 379 U.S. 3, 85 S.Ct. 75, 13 L.Ed.2d 22 (1964); *Freezer Storage, Inc. v. Armstrong Cork Co.*, 234 Pa.Super. 441, 447, 341 A.2d 184, 186 (1975), *aff'd*, 476 Pa. 270, 382 A.2d 715 (1978); *Robson v. Penn Hills School District*, 63 Pa.Cmwlth. 250, 255, 437 A.2d 1273, 1276 (1981); *In re Street*, 67 Pa.Cmwlth. 441, 443, 447 A.2d 1052, 1054 (1982); *Picariello v. Common-*

*wealth,* 54 Pa.Cmwlth. 252, 255, 421 A.2d 477, 479 (1980); *Workmen's Compensation Appeal Board v. Bethlehem Mines Corp.,* 23 Pa.Cmwlth. 517, 520, 353 A.2d 79, 80–81 (1976). It is appellant's contention that Section 36 of the Act of 1963 violated the equal protection clause because it created two classifications of tortfeasors, one consisting solely of metropolitan transportation authorities, and the other including all private individuals or corporations. He contends that this distinction lacked "substantial, rational or reasonable reasons for favoring the governmental tortfeasor with special notice requirements."

Initially, in any equal protection challenge the correct level of judicial scrutiny must be determined. "[T]here are three tests by which legislatively created classifications are measured in order to determine whether those classifications meet the muster of the Equal Protection Clause. The so-called 'strict scrutiny test' is applied to those classifications affecting fundamental rights and liberties, or classifications which are 'inherently suspect'. See: *San Antonio School Dist. v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *McDonald v. Board of Election,* 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). There is an intermediate test which is applied to so-called 'quasi-suspect' classifications, such as gender, which requires heightened scrutiny but not scrutiny as intense as that applied in cases involving fundamental rights or inherently suspect classifications. *See Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). [citations omitted]. The third test is the 'rational basis' or 'rational relationship' test. It is applied in those cases not involving fundamental rights, but involving legitimate governmental interests and classifications neither inherently suspect nor quasi-suspect. *See Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)." *Long v. 130 Market Street Gift & Novelty of Johnstown,* 294 Pa.Super. 383, 396 n. 9, 440 A.2d 517, 523 n. 9 (1982). Where, as here, the statute is not based upon a suspect classification and does not interfere

with a fundamental right, the "rational basis" test must be employed. *Snider v. Thornburgh, supra,* 496 Pa. at 167, 436 A.2d at 596; *Tsarnas v. Jones & Laughlin Steel Corporation, supra* 488 Pa. at 523, 412 A.2d at 1099; *Commonwealth v. Bottchenbaugh,* 306 Pa.Super. 406, 411, 452 A.2d 789, 791 (1982); *Long v. 130 Market Street Gift & Novelty of Johnstown, supra* 294 Pa.Super. at 402, 440 A.2d at 527. Accord: *Schroeder Aviation, Inc. v. DeFehr,* 283 N.W.2d 147, 152 (N.D., 1979); *Brown v. Wichita State University,* 219 Kan. 2, 16, 547 P.2d 1015, 1027 (1976) appeal dismissed 429 U.S. 806, 97 S.Ct. 41, 50 L.Ed.2d 67 (1976); *Newlan v. State,* 96 Idaho 711, 713, 535 P.2d 1348, 1350–1351 (1975), appeal dismissed sub nom *Agost v. Idaho,* 423 U.S. 993, 96 S.Ct. 419, 46 L.Ed.2d 367 (1975). Under this level of scrutiny, in order to withstand constitutional challenge, the classification must be reasonable, not arbitrary, and rest upon a difference having a fair and substantial relation to the object of the legislation. *Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989, 990–991 (1920); *Snider v. Thornburgh, supra* 496 Pa. at 167, 436 A.2d at 597; *Laudenberger v. Port Authority of Allegheny County,* 496 Pa. 52, 68, 436 A.2d 147, 155 (1981), appeal dismissed sub nom *Bucheit v. Laudenberger,* 456 U.S. 940, 102 S.Ct. 2002, 72 L.Ed.2d 462 (1982); *Hayes v. Erie Insurance Exchange, supra* 493 Pa. at 156, 425 A.2d at 422; *Kroger Company v. O'Hara Township,* 481 Pa. 101, 119, 392 A.2d 266, 275 (1978); *Moyer v. Phillips,* 462 Pa. 395, 400–401, 341 A.2d 441, 443 (1975).

Appellant's argument that the notice requirement of Section 36 of the Act of 1963 is constitutionally infirm because it creates two classes of tortfeasors, based solely upon the status of the tortfeasor, is without merit. " '[T]he Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objec-

tive. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' " *Freezer Storage, Inc. v. Armstrong Cork Co., supra* 234 Pa.Super. at 447, 341 A.2d at 187 quoting *McGowan v. Maryland,* 366 U.S. 420, 425–426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). Accord: *Reed v. Reed,* 404 U.S. at 75, 92 S.Ct. at 253, 30 L.Ed.2d 225 (1971); *Hayes v. Erie Insurance Exchange, supra* 493 Pa. at 155, 425 A.2d at 422; *Tsarnas v. Jones & Laughlin Steel Corporation, supra* 488 Pa. at 522, 412 A.2d at 1098–1099; *Kroger Company v. O'Hara Township, supra* 481 Pa. at 118–119, 392 A.2d at 275; *Adler v. Montefiore Hospital Association of Western Pennsylvania,* 453 Pa. 60, 76–77, 311 A.2d 634, 643 (1973), *cert. denied,* 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755 (1974); *Commonwealth v. Bottchenbaugh, supra* 306 Pa.Super. at 412, 452 A.2d at 791. Thus, the law is quite well established and clear "that the Legislature may permissibly limit liability on the basis of a defendant's status." *Carroll v. County of York,* 496 Pa. 363, 368, 437 A.2d 394, 397 (1981) citing *Freezer Storage, Inc. v. Armstrong Cork Co.,* 476 Pa. 270, 382 A.2d 715 (1978) and *Sherwood v. Elgart,* 383 Pa. 110, 117 A.2d 899 (1955). Accord: *Marino v. Seneca Homes, Inc.,* 63 Pa. Cmwlth. 534, 541, 439 A.2d 1287, 1291 (1981); *Picariello v. Commonwealth, supra* 54 Pa.Cmwlth. at 257–258, 421 A.2d at 482.

The classification challenged by appellant, i.e., all metropolitan transportation authority tortfeasors, is a classification based upon a legitimate state objective of furthering and improving urban mass transportation. In furtherance of this goal, the legislature has imposed upon persons injured by transportation authorities a duty to notify promptly agencies against whom claims are to be made. This is a reasonable restriction upon the right to recover. The Pennsylvania Supreme Court has held that "it is within the province of the Legislature to determine that certain

bars to suit are, in its judgment, needed for the operation of local government." *Carroll v. County of York, supra* 496 Pa. at 370, 437 A.2d at 397. (footnote omitted). Therefore, if the statutory classification of all metropolitan transportation authority tortfeasors is rationally related to the legislature's objective in enacting the statute, it is a constitutionally permissible classification and must be upheld.

Section 2 of the Metropolitan Transportation Authorities Act of 1963 contained the declaration of legislative public policy with regard to the establishment of transportation authorities under the Act, and provided in part:

> "It is hereby determined and declared as a matter of legislative finding: (a) That there exists in the urban and suburban communities in metropolitan areas, traffic congestion and serious mass transportation problems because of underdeveloped, uncoordinated obsolete mass transportation facilities .... (b) ... harmful to the social and economic well-being of the entire area .... (c) That ... cannot be effectively dealt with by private enterprise .... (d) ... that the public acquisition of existing mass transportation facilities ... will promote the public health, safety, convenience and welfare .... (g) That the establishment of metropolitan transportation authorities will promote the public safety, convenience and welfare ....
>
> Therefore, it is hereby declared to be the policy of the Commonwealth of Pennsylvania to promote the safety and welfare of the inhabitants thereof by authorizing the creation of a body corporate and politic for each metropolitan area, ... for the purposes contained in this act. Such purposes are hereby declared to be public uses...."
> 66 P.S. § 2002.

While the Act of 1963 did not expressly discuss the purpose of the notice requirement, this Court has previously held that the purpose of Section 36 of the Act of 1963 is to "provide the defendant with the opportunity to make timely investigation and avoid the difficulty of defending against stale and fraudulent claims." *Dubin v. Southeastern*

*Pennsylvania Transportation Authority,* 219 Pa.Super. 476, 478, 281 A.2d 711, 712 (1971), *allocatur denied,* 219 Pa.Super. XXXVII (1972). Accord: *Irrera v. Southeastern Pennsylvania Transportation Authority,* 231 Pa.Super. 508, 518, 331 A.2d 705, 710 (1974).

A similar notice requirement for claims against municipalities contained in the Act of July 1, 1937, P.L. 2547, § 1, 53 P.S. § 5301[2] withstood constitutional challenge in *Eisenhauer v. Cleveland Township,* 154 Pa.Super. 206, 215, 35 A.2d 570, 574 (1944). Early notice has been recognized as a legitimate means "by which municipal governments might protect themselves against claims of those who have tarried so long that they have made it insurmountably difficult for the municipality to conduct a proper investigation into the circumstances of the accident." *Yurechko v. County of Allegheny,* 430 Pa. 325, 332–333, 243 A.2d 372, 377 (1968). Accord: *Zack v. Saxonburg Borough,* 386 Pa. 463, 465, 126 A.2d 753, 754 (1956); *Aloia v. City of Washington,* 361 Pa. 620, 624, 65 A.2d 685, 687 (1949); *Landis v. City of Philadelphia,* 245 Pa.Super. 514, 518–519, 369 A.2d 746, 748 (1976). See also: *LaBriola v. Southeastern Pennsylvania Transportation Authority,* 227 Pa.Super. 305, 323 A.2d 9 (1974).[3]

Courts of other jurisdictions have also recognized that valid purposes are served by similar notice requirements and include: "(1) to investigate evidence while fresh; (2) to prepare a defense in case litigation appears necessary; (3) to evaluate claims, allowing early settlement of meritorious

**2.** Repealed by Section 2 of the Judiciary Act Repealer Act of April 28, 1978, P.L. 202, No. 53, § 2(a) [1205]. The notice requirement for claims against municipalities is now provided for by the Act of October 5, 1980, P.L. 693, No. 142, § 221(i)(1); 42 Pa.C.S. § 5522.

**3.** In recognition of statutory purposes and objectives, courts have permitted plaintiffs to pursue causes of action even in the absence of compliance with the notice requirements of the Acts of 1963 and 1937, where the defendants would not be unduly prejudiced. See: *Yurechko v. County of Allegheny, supra; Landis v. City of Philadelphia, supra; LaBriola v. Southeastern Pennsylvania Transportation Authority, supra; Dubin v. Southeastern Pennsylvania Transportation Authority, supra.*

ones; (4) to protect against unreasonable or nuisance claims; (5) to facilitate prompt repairs, avoiding further injuries; (6) to allow the municipality [or agency] to budget for payment of claims; and (7) to insure that officials responsible for the above tasks are aware of their duty to act." *Budahl v. Gordon & David Associates,* 287 N.W.2d 489, 492 (S.D., 1980). Accord: *Newlan v. State, supra,* 96 Idaho at 714, 535 P.2d at 1351–1352; *Fuller v. Rutgers, the State University,* 154 N.J.Super. 420, 424, 381 A.2d 811, 814 (1977); *Stanley v. City and County of San Francisco,* 48 Cal.App.3d 575, 580, 121 Cal.Rptr. 842, 846 (1975). See also: Anno., Modern Status of the Law as to Validity of Statutes or Ordinances Requiring Notice of Tort Claim Against Local Governmental Entity, 59 A.L.R.3d 93 (1974).

The lead opinion cites decisions from four jurisdictions which have held that notice requirements applicable only to governmental tortfeasors violate the equal protection clause.[4] In reaching such a conclusion, however, the courts in *all four* jurisdictions noted that in their respective states, the defense of sovereign immunity was not available to the tortfeasors named as defendants. See: *O'Neil v. Parkersburg,* 237 S.E.2d 504, 507 (W.Va.1977); *Hunter v. North Mason High School,* 85 Wash.2d 810, 817, 539 P.2d 845, 850 (1975); *Turner v. Staggs,* 89 Nev. 230, 510· P.2d 879, 881 (Nev.1973), ·*cert. denied,* 414 U.S. 1079, 94 S.Ct. 598, 38 L.Ed.2d 486 (1973); *Reich v. State Highway Department,* 386 Mich. 617, 622, 194 N.W.2d 700, 702 (1972). The vast majority of courts, however, have held that notice requirements, some as short as·thirty days, do not violate principles of equal protection, especially where sovereign immunity is a recognized defense. See: *DeAlmanza v. Laredo Water Works System,* 582 F.2d 970 (5th Cir.1978) (applying Texas law); *Oquendo v. Insurance Company of Puerto Rico,* 388 F.Supp. 1030 (D.C.Puerto Rico 1974);. *Budahl v. Gordon & David Associates, supra; Herman v. Magnuson,* 277 N.W.2d 445 (N.D.1979); *Schroeder Aviation, Inc.*

---

4.  *Carson v. Maurer,* 120 N.H. 925, 424 A.2d 825 (N.H.1980) involved a notice requirement applicable to medical malpractice actions, not actions against governmental tortfeasors.

*v. DeFehr, supra; Parton v. City of Huntsville,* 362 So.2d 898 (Ala.1978); *Fritz v. Regents of the University of Colorado,* 196 Colo. 335, 586 P.2d 23 (1978); *Espanola Housing Authority v. Atencio,* 90 N.M. 787, 568 P.2d 1233 (1977); *Fujimura v. Chicago Transit Authority,* 67 Ill.2d 506, 10 Ill.Dec. 619, 368 N.E.2d 105 (1977); *Geyer v. The City of Logansport,* 267 Ind. 334, 370 N.E.2d 333 (Indiana 1977); *Binder v. City of Madison,* 72 Wis.2d 613, 241 N.W.2d 613 (1976); *Crowder v. Salt Lake County,* 552 P.2d 646 (Utah 1976); *Campbell v. The City of Lincoln,* 195 Neb. 703, 240 N.W.2d 339 (1976); *Newlan v. State, supra; Awe v. University of Wyoming,* 534 P.2d 97 (Wyo.1975); *Tessier v. Ann & Hope Factory Outlet, Inc.,* 114 R.I. 315, 332 A.2d 781 (1975); *Wilson v. District of Columbia,* 338 A.2d 437 (D.C.Ct.App.1975); *Lunday v. Vogelmann,* 213 N.W.2d 904 (Iowa 1973); *Housewright v. The City of LaHarpe,* 51 Ill.2d 357, 282 N.E.2d 437 (1972); *Gallegos v. Midvale City,* 27 Utah 2d 27, 492 P.2d 1335 (1972); *Workman v. The City of Emporia,* 200 Kan. 112, 434 P.2d 846 (1967); *McCann v. The City of Lake Wales,* 144 So.2d 505 (Fla.1962); *Brown v. Portland School District No. 1,* 48 Or.App. 571, 617 P.2d 665 (1980); *Fuller v. Rutgers, the State University, supra; Pausley v. Chaloner,* 54 App.Div.2d 131, 388 N.Y.S.2d 35 (1976); *Brantley v. The City of Dallas,* 498 S.W.2d 452 (Tex.Civ.App.1973), error ref. n.r.e., *cert. denied,* 415 U.S. 983, 94 S.Ct. 1576, 39 L.Ed.2d 880 (1974).

It seems apparent, therefore, that well settled principles of law and the precedent established by prior decisions require that appellant's constitutional argument be rejected. I confess to an inability to understand why the majority, despite a wealth of legal authority to the contrary, is prepared to depart from the mainstream of legal thought and, in effect, nullify all municipal notice requirements enacted by the legislature as a prerequisite to judicial enforcement of tort claims against municipal bodies. The argument made by appellant and cited by the lead opinion that the notice requirement falls most heavily on the poor is an argument "grounded not on constitutional precepts, but

on social policies. As such, they must be addressed to the legislature, and not to the courts." *Tsarnas v. Jones & Laughlin Steel Corporation, supra* 488 Pa. at 523, 412 A.2d at 1099.

Appellant's contentions that Section 36 of the Act of 1963 violates Article I, Sections 11 and 26 of the Pennsylvania Constitution are equally lacking in merit. The Supreme Court, in *Carroll v. County of York, supra,* has already held that Article I, Section 11 [5] was " 'intended to allow the Legislature if it desired, to choose cases in which the Commonwealth should be immune....' " *Id.* 496 Pa. at 367, 437 A.2d at 396 quoting *Mayle v. Pennsylvania Department of Highways,* 479 Pa. 384, 400, 388 A.2d 709, 717 (1978). Thus, the Legislature could validly abolish a cause of action against the Commonwealth, and the Political Subdivision Tort Claims Act [6] is a valid exercise of legislative authority and not violative of Article I, Section 11 of the Pennsylvania Constitution. See also: *Tsarnas v. Jones & Laughlin Steel Corporation, supra* 488 Pa. at 518–520, 412 A.2d at 1096–1097. If the Legislature can validly abolish a cause of action against the Commonwealth, it follows that it can impose procedural conditions for maintaining an action against an agency or instrumentality of the state. See also: *Freeze Storage, Inc. v. Armstrong Cork Company, supra* 476 Pa. at 280–281, 382 A.2d at 720–721; *Singer v. Sheppard,* 464 Pa. 387, 400, 346 A.2d 897, 903–904 (1975) (plurality opinion).

**5.** Article I, Section 11 of the Pennsylvania Constitution provides: "All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."

**6.** Act of November 26, 1978, P.L. 1399, 53 P.S. §§ 5311.101–5311.803, repealed by Section 333 of the Judiciary Act Repealer Act, Continuation Act of 1980, Act of October 5, 1980, P.L. 693, 42 P.S. § 20043. A similar provision is now found in the Judicial Code, 42 Pa.C.S. §§ 8541–8564.

Section 26 of Article I of the Pennsylvania Constitution provides: "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." The notice requirement of Section 36 of the Metropolitan Transportation Authorities Act of 1963 did not deny appellant the enjoyment of any civil right. Rather, it created an obligation to give notice to a metropolitan transportation authority before commencing a legal action for damages against such authority. If we were to conclude that Section 36 of the Act of 1963 violated Article I, Section 26 of the Constitution, we would be obliged to hold that statutes of limitation applicable to actions against governmental agencies also violate Section 26 of Article I. This is clearly not the purpose of the guarantee contained in this section of the Constitution. See and compare: *Astemborski v. Susmarski*, 499 Pa. 99, 451 A.2d 1012 (1982).

For the foregoing reasons, I would find that the statutory provision was valid and would affirm the order of the trial court entering summary judgment in favor of the appellee.